## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

AARON HALL, KATHERINE GLOD, and
JEFFREY BINDER, on behalf of
themselves and all others similarly situated,

**Case No: 4:22-cv-12743-LJM-CI**

**Honorable Laurie J. Michelson**

Plaintiff

vs

TRIVEST PARTNERS L.P., TGIF POWER
HOME INVESTOR, LLC, and WILLIAM
JAYSON WALLER

Defendants

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS TRIVEST PARTNERS L.P. AND TGIF POWER HOME INVESTOR, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND .................................................................2

LEGAL STANDARDS .........................................................................4

   A. RULE 12(b)(2) MOTION TO DISMISS ....................................4

   B. RULE 12(b)(6) MOTION TO DISMISS ....................................5

   C. RULE 12(b)(7) MOTION TO DISMISS ....................................6

ARGUMENT ........................................................................................7

   A. THE COURT HAS PERSONAL JURISDICTION OVER THE
      MOVING DEFENDANTS.............................................................7

   B. PLAINTIFFS STATE CLAIMS UNDER RICO ........................10

     1. Plaintiffs State Claims Under 18 U.S.C. § 1962(c)..................10

     2. Plaintiffs Satisfy RICO's Proximate Cause Requirement........13

     3. Plaintiffs Do Not Allege an Enterprise Consisting of a Corporation's
       Own Employees........................................................................15

     4. Plaintiffs State Claims Under 18 U.S.C. § 1962(d) .................16

   C. PLAINTIFFS STATE CLAIMS UNDER THE MCPA ..............17

     1. The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims .............17

     2. The MCPA's Safe Harbor Provision Does Not Bar Plaintiffs' Claims ...20

   D. PLAINTIFFS HAVE NOT FAILED TO NAME A

NECESSARY PARTY ................................................................................21

CONCLUSION ......................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                     Page(s)

*Am. BioCare Inc. v. Howard & Howard Attys. PLLC*,
702 F. App'x 416 (6th Cir. 2017) .............................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................5

*Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776 (6th Cir. 2000).....................4

*Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984) ............................. 13-14

*Bennett v. U.S. Trust Co. of New York,* 770 F.2d 308 (2d Cir. 1985) ....................23

*Brown v. Cassens Transp. Co.*, 546 F.3d 347 (6th Cir. 2008)....................10, 11, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................5, 6

*Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) .................................11, 14

*C&S Elec. Serv. v. Acemco*, No. 289094,
2010 Mich. App. LEXIS 1373 (Ct. App. July 15, 2010) .................................. 18-19

*Cargill, Inc. v. Boag Cold Storage Warehouse*, 71 F.3d 545 (6th Cir. 1995).........17

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) ............................. 4-5

*Colvin v. MacLaren*, 2018 U.S. Dist. LEXIS 146377
(W.D. Mich. May 31, 2018) ......................................................................5

*DaimlerChrysler Corp. v. Wesco Distribution*,
281 Mich. App. 240 (Ct. App. 2008)..........................................................18

*Drummond Island Yacht Haven, Inc. v. S. Fla. Sod, Inc.*,
Nos. 308274, 308483, 2014 Mich. App. LEXIS 71 (Ct. App. Jan. 16, 2014) ........18

*Farm Bureau Mut. v. Combustion Research Corp.*, 662 N.W.2d 439
(Ct. App. Mar. 18, 2003).........................................................................15

*Fenner v. GM, LLC (In re Duramax Diesel Litig.)*,
298 F. Supp. 3d 1037 (E.D. Mich. 2018).......................................................... 11-13

*Frommert v Bobson Constr Co*, 219 Mich. App. 735 (1996)...................................18

*Gaines v. Cty. of Wayne*, 2021 U.S. Dist. LEXIS 34895
(E.D. Mich. Feb. 25, 2021) ....................................................................................5, 6

*Gorsuch v. OneWest Bank, FSB*, No. 3:14 CV 152,
2015 U.S. Dist. LEXIS 63976 (N.D. Ohio May 15, 2015) .........................10, 14, 15

*GM, LLC v. FCA US, LLC*, 44 F.4th 548 (6th Cir. 2022) ......................................14

*Greer v. Home Realty Co. of Memphis*, No. 07-2639,
2008 U.S. Dist. LEXIS 126148 (W.D. Tenn. Aug. 7, 2008)....................................14

*Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 538 NW2d 424 (1995) ............18

*In re ClassicStar Mare Lease Litig.*, 727 F.3d 473 (6th Cir. 2013) ........................10

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
23 F. Supp. 2d 796 (N.D. Ohio 1998).......................................................................8

*J & B Sausage Co. v. Dep't of Mgmt. & Budget & Dep't of Educ.*,
No. 259230, 2007 Mich. App. LEXIS 20 (Ct. App. Jan. 4, 2007).........................18

*Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306 (6th Cir. 2021) ......................6

*Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007)............................20

*Lyon v. Rappaport (In re ClassicStar, LLC)*,
No. 10-8059, 2011 Bankr. LEXIS 558 (B.A.P. 6th Cir. Feb. 24, 2011) ..................7

*M11 Motors, LLC v. Up Trading, LLC*, No. 5:17-cv-1365,
2017 U.S. Dist. LEXIS 212648 (N.D. Ohio Dec. 28, 2017) ....................................8

*Manhattan Tele. Corp. v. DialAmerica Mktg., Inc.*,
156 F. Supp. 2d 376 (S.D.N.Y. 2001) .....................................................................15

*Odish v. Peregrine Semiconductor, Inc.*, No. 2:13-CV-14026,
2014 U.S. Dist. LEXIS 182751 (E.D. Mich. Nov. 17, 2014)...................................9

*O'Mara v. Cmty. Mental Health of Washtenaw Cty.*, No. 21-12278,
2022 U.S. Dist. LEXIS 168754 (E.D. Mich. Aug. 8, 2022).................................. 6-7

*Palatkevich v. Choupak*, 2014 U.S. Dist. LEXIS 10570
(S.D.N.Y. Jan. 24, 2014)................................................................................. 22-23

*Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432 (6th Cir. 2022) ...........7

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339
(2d Cir. 1994))...................................................................................................23

*State Farm Mut. Ins. Co. v. Elite Health Ctrs., Inc.*, No. 16-13040,
2017 U.S. Dist. LEXIS 82736 (E.D. Mich. May 31, 2017) ...................................23

*Temple v. Synthes Corp.*, 498 U.S. 5 (1990)........................................................23

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004) .............................15

*Turunen v. Creagh*, No. 2:13-CV-106,
2016 U.S. Dist. LEXIS 43158 (W.D. Mich. Mar. 31, 2016).................................21

*Unencumbered Assets Tr. v. JP Morgan Chase Bank*
*(In re Nat'l Century Fin. Enters.)*, 604 F. Supp. 2d 1128 (S.D. Ohio 2009)...........13

*United States v. Frost*, 125 F.3d 346 (6th Cir. 1997) ...............................................1

*Uselmann v. Razvan Pop*, 495 F. Supp. 3d 528 (E.D. Mich. 2020) .........................4

*Vild v. Visconsi*, 956 F.2d 560 (6th Cir. 1992) ...............................................10, 14

*W. Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar*
*Mare Lease, Litig.)*, 727 F.3d 473 (6th Cir. 2013) ..........................................16, 22

*Wallace v. Midwest Fin. & Mortg. Servs.*, 714 F.3d 414 (6th Cir. 2013) ..............14

*Whitaker v. Stamping*, 302 F.R.D. 138 (E.D. Mich. 2014)................................... 4-5

## Statutes

18 U.S.C. § 1962(a) ...................................................................................1

18 U.S.C. § 1962(c) ....................................................................10, 22, 23

18 U.S.C. § 1962(d) ...............................................................................16

18 U.S.C. § 1965(a) .................................................................................7

18 U.S.C. § 1965(b) .................................................................................7

MCL § 445.901 *et seq* ............................................................................2

MCL § 600.705 .........................................................................................9

MCL § 600.715 .......................................................................................21

## Rules

Fed. R. Civ. P. 9(b) ..........................................................................11, 13

Fed. R. Civ. P. 12(b)(2)........................................................................4, 10

Fed. R. Civ. P. 12(b)(6).................................................................10, 15, 17

Fed. R. Civ. P. 12(b)(7)........................................................................5, 21

Fed. R. Civ. P. 19 ....................................................................................6

Fed. R. Civ. P. 19(a)(1)........................................................................6, 21

Fed. R. Civ. P. 56 ..................................................................................15

## INTRODUCTION

One of the three Defendants in this case filed an answer. ([ECF No. 15]). The other two filed a scattershot motion to dismiss which is untethered from all applicable authority. ([ECF No. 17]). Trivest Partners L.P. and TGIF Power Home Investor, LLC (the "Moving Defendants") misapprehend nearly[1] every conceivable aspect of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as it applies to this case. They argue that the Court lacks personal jurisdiction, that Plaintiffs have failed to state claims for each of their causes of action, and that the case should be dismissed for lack of a necessary party. These arguments cannot withstand even the slightest scrutiny.

First, the Moving Defendants' personal jurisdiction analysis bears little relationship to the applicable test. The Court has jurisdiction over all Defendants because RICO creates nationwide personal jurisdiction under the circumstances, a fact the Moving Defendants fail to consider in relying on a faulty traditional personal jurisdiction analysis.

Similarly, Plaintiffs have stated RICO claims because contrary to Defendant's assertions, they need not specifically allege that the Moving Defendants used the

---

[1] The one exception being that Plaintiffs do not contest the motion as it relates to their claims under 18 U.S.C. § 1962(a). Plaintiffs agree to the dismissal of the portion of Cause of Action I that relates to subsection (a), but oppose Moving Defendants' request to dismiss the portion of that Cause of Action relating to subsection (c).

mail or wires *at all*, much less in specific ways, in order to state RICO claims against them. Nor do Plaintiffs need to plead reliance on any statement made through the mail or wires. Plaintiffs have adequately alleged Defendants' participation in a RICO enterprise whose predicate acts are connected by a straight line to Plaintiffs' injuries. This is what the law requires.

Further, neither of the proffered exceptions to the Michigan Consumer Protection Act ("MCPA") can immunize the Moving Defendants from Plaintiffs' claims. Plaintiffs' claims cannot be barred by the economic loss doctrine because their primary purpose is for the provision of services. Even the "specifically authorized" provision that is fatal to so many MCPA claims does not apply here, because the sale and installation of home solar systems is not a regulated or authorized activity in Michigan, as it is in some other states.

Finally, contrary to the Moving Defendants' conclusory argument, the defunct Power Home Solar, LLC is the RICO enterprise in this case, and by definition not a necessary party. The motion must be denied in its entirety.

## FACTUAL BACKGROUND

On November 13, 2022, Plaintiffs filed this action against the Moving Defendants and William Jayson Waller. ([ECF No. 1]). Plaintiffs allege that the three Defendants violated RICO through their conduct of Power Home Solar, LLC through a pattern of racketeering activity. (*See generally Id.*). The Complaint details

2

a fraudulent scheme designed to lure unsuspecting consumers into purchasing home solar systems to be designed, installed, and sold by PHS/PE, and which was carried out by Defendants through multiple uses of the mail and wires. (*Id.*). The scheme included countless false and misleading advertisements, training materials, and other communications designed to achieve its ends.

Specific to the Moving Defendants, the Complaint alleges that they directly participated in PHS/PE's fraudulent advertising campaign. (*Id.* ¶¶ 7-8). They "worked with the Powerhome team to optimize the customer journey… starting with the moment a potential client sees an advertisement.") (*Id.* ¶ 67). They communicated with Defendant Waller daily regarding the operation of the business. (*Id.* ¶ 68). "Trivest, including but not exclusively through its subsidiary TGIF, participated in the management of PHS's marketing, sales, and business as a whole." (*Id.* ¶ 71). "Trivest and TGIF committed countless acts of mail and wire fraud through PHS/PE by causing it to send out false, misleading, and fraudulent advertisements, communications, training materials, and instructions through the mails and wires (by internet, telephone, and/or fax)[.]" (*Id.* ¶ 72). PHS's fraudulent advertising campaigns "were conceived, designed, and created by Defendant Waller with the direct involvement and participation of Trivest and TGIF, which provided funding, guidance, and oversight for the campaign, among other things." (*Id.* ¶ 75).

The Complaint describes the fraudulent scheme in detail, including numerous verbatim fraudulent communications. (*Id.* ¶¶ 73-81).

As a direct result of the pattern of racketeering activity, Plaintiffs were injured by purchasing home solar systems that did not and could never have functioned as they were led to believe they would. (*Id.* at ¶¶ 83-92). The systems were not designed or installed by qualified professionals, which functionally guaranteed their near-uselessness. (*See, e.g., Id.* at 98). They brought this action on behalf of all others similarly situated to recover for the injuries that stemmed from the Defendants' pattern of fraud and racketeering.

## LEGAL STANDARDS

Generally, "RICO pleadings are to be liberally construed." *Uselmann v. Razvan Pop*, 495 F. Supp. 3d 528, 537 (E.D. Mich. 2020) (citing *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000)).

### A. RULE 12(b)(2) MOTION TO DISMISS

"The party that petitions the court to assert personal jurisdiction over another party has the burden of proving that such jurisdiction exists." *Whitaker v. Stamping*, 302 F.R.D. 138, 147 (E.D. Mich. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)). "The petitioning party need only establish prima facie jurisdiction. A party establishes prima facie personal jurisdiction if he alleges sufficient facts to support a reasonable inference that the defendant can be

subjected to jurisdiction in that state." *Id.* (citations omitted). "When a court decides a jurisdictional issue without conducting an evidentiary hearing, it must consider all pleadings and affidavits in the light most favorable to the plaintiff." *Id.* (citing *CompuServe*, 89 F.3d at 1262).

## B. RULE 12(b)(6) MOTION TO DISMISS

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Gaines v. Cty. of Wayne*, 2021 U.S. Dist. LEXIS 34895, *6 (E.D. Mich. Feb. 25, 2021) (internal punctuation omitted). The defendant's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the [defendant]." *Colvin v. MacLaren*, 2018 U.S. Dist. LEXIS 146377, *11 (W.D. Mich. May 31, 2018). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 571 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, draw all reasonable inferences in its favor, and accept all

well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). A complaint "need not contain detailed factual allegations." *Gaines*, 2021 U.S. Dist. LEXIS 34895, *6 (citing *Twombly*, 550 U.S. at 555). "Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote." *Gaines,* 2021 U.S. Dist. LEXIS 34895, *6 (citing *Twombly,* 550 U.S. at 556). "Accordingly, a motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gaines*, 2021 U.S. Dist. LEXIS 34895, *6.

## C. RULE 12(b)(7) MOTION TO DISMISS

"Fed. R. Civ. P. 12(b)(7) allows dismissal when a Plaintiff fails to join a party under Fed. R. Civ. P. 19. Rule 19 requires joinder of a party if their joinder would not deprive the court of subject matter jurisdiction and 'in that person's absence, the court cannot accord complete relief among existing parties.'" *O'Mara v. Cmty. Mental Health of Washtenaw Cty.*, No. 21-12278, 2022 U.S. Dist. LEXIS 168754, at *5-6 (E.D. Mich. Aug. 8, 2022) (quoting Fed. R. Civ. P. 19(a)(1)(A)). "Rule 19 provides a three-step analysis to determine whether a party must be joined in an action. First, the Court should determine whether a party who is not joined is a necessary party that should be joined if possible, based on the requirements outlined

in Rule 19(a). Second, if deemed a necessary party, the Court should determine whether the party is subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction. Third, if a party cannot feasibly be joined, the Court then analyzes the Rule 19(b) factors to determine whether the case should be dismissed without the omitted party as the final step." *Id.* (citations omitted). "[A] Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." *Lyon v. Rappaport (In re ClassicStar, LLC)*, No. 10-8059, 2011 Bankr. LEXIS 558, at *22 (B.A.P. 6th Cir. Feb. 24, 2011) (quoting Charles A. Wright, *et al., Federal Practice and Procedure* § 1359 at 65 (3d. ed. 2008)).

## **ARGUMENT**

### A. THE COURT HAS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS

The Moving Defendants devote nearly nine pages to their analysis of the law of personal jurisdiction. It can be thrown out entirely. In RICO cases, "[Section] 1965(b) extends personal jurisdiction through nationwide service of process over 'other parties residing in any other district,' as long as venue is proper through [Section 1965](a) with that initial defendant and the 'ends of justice' require it." *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440 (6th Cir. 2022). Finding jurisdiction over the moving Defendants only "requires at least one

defendant with traditional forum state contacts … such that any number of defendants from other districts may be joined under § 1965(b)." *Id.* at 441.

"Courts have found that Congress intended the 'ends of justice' language to provide a means for 'plaintiffs to bring all members of a nationwide RICO conspiracy before the court in a single trial.'" *M11 Motors, LLC v. Up Trading, LLC*, No. 5:17-cv-1365, 2017 U.S. Dist. LEXIS 212648, at *5 (N.D. Ohio Dec. 28, 2017) (quoting *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 803 (N.D. Ohio 1998)). Therefore, "[f]or nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id.* (citation omitted).

This Court has, at a minimum, specific personal jurisdiction over Defendant Waller for purposes of Plaintiffs' claims.

> With respect to specific personal jurisdiction over individual defendants, the Michigan long-arm statute provides:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

8

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

*Odish v. Peregrine Semiconductor, Inc.*, No. 2:13-CV-14026, 2014 U.S. Dist. LEXIS 182751, at *16-17 (E.D. Mich. Nov. 17, 2014) (quoting MCL § 600.705).

Waller personally transacted business within Michigan through PHS/PE and caused consequences within the state resulting in an action for tort. Venue is therefore proper through Section 1965(a), such that jurisdiction over the moving Defendants is appropriate so long as there is no other district in which a court would have personal jurisdiction over all three Defendants. There is not. The moving Defendants are citizens of Florida and Delaware. There is no suggestion or indication that Defendant Waller could be subject to personal jurisdiction for Plaintiffs' claims in either of those states. The "ends of justice" therefore require Defendants to face

Plaintiffs' claims in this Court. The Moving Defendants' motion should be denied under Rule 12(b)(2).

## B. PLAINTIFFS STATE CLAIMS UNDER RICO

Like their personal jurisdiction argument, the Moving Defendants' 12(b)(6) argument plainly applies the wrong legal standard. Almost none of what the Moving Defendants advance matches the elements of a properly pled RICO claim based on mail and/or wire fraud. The Moving Defendants assert that Plaintiffs must plead *specific* acts of mail and/or wire fraud *by the Moving Defendants* upon which *Plaintiffs actually relied*. ([ECF No. 17], 13-17). That is not how RICO works.

### 1. Plaintiffs State Claims Under 18 U.S.C. § 1962(c).

The "the elements of an underlying RICO violation [are] '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F. App'x 416, 421 (6th Cir. 2017) (citing *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013)). As an initial matter, a RICO plaintiff's "injury must be the result of the 'pattern of activity,' not the result of each separate predicate act[.]" *Gorsuch v. OneWest Bank, FSB*, No. 3:14 CV 152, 2015 U.S. Dist. LEXIS 63976, at *17 (N.D. Ohio May 15, 2015) (quoting *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 353 (6th Cir. 2008); citing *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992)). Second, the Moving Defendants need not have committed any acts of mail or wire fraud themselves, much less specific

fraudulent communications. "Importantly, '[a] defendant may commit mail fraud even if he personally has not used the mails.'" *Fenner v. GM, LLC (In re Duramax Diesel Litig.)*, 298 F. Supp. 3d 1037, 1082 (E.D. Mich. 2018) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997)). "A mail fraud conviction requires only a showing that the defendant acted with knowledge that use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen use of the mails." *Id.* "The use of the mails 'need only be closely related to the scheme and reasonably foreseeable as a result of the defendant's actions.'" *Id.*

Further, "Plaintiffs do not bear the burden of pleading uses of the mail or wire that were fraudulent. They need only identify uses of the mail or wire which furthered the fraudulent scheme." *Fenner,* 298 F. Supp. 3d at 1083. Finally, "[a]fter *Bridge* [*v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 641 (2008)], plaintiffs need not plead or prove that they relied on defendants' alleged misrepresentations in order to establish the elements of their civil RICO claim based on mail or wire fraud." *Brown.*, 546 F.3d at 357.

"When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Fenner*, 298 F. Supp. 3d at 1082 (citations omitted). This is

exactly what the Complaint does. (*See, e.g.,* [ECF No. 1] ¶¶ 73-79, 81-82) (listing

numerous specific statements made on Facebook and PHS' website, from PHS' own

accounts and others, and noting that the fraudulent statements were made

"immediately following Trivest's investment in PHS[,]" "uninterrupted through the

class period[,]" "conceived, designed, and created by Defendant Waller with the

direct involvement and participation of Trivest and TGIF[,]" and describing the

reasons the statements were fraudulent throughout the complaint).

The Moving Defendants' error is aptly illuminated by *Fenner*. There, the

court noted that

> [i]n making the argument that Plaintiffs must specifically allege
> fraudulent uses of the mail and wires, Defendants conflate several legal
> requirements. As described above, Plaintiffs bear the burden of alleging
> that each Defendant committed two predicate acts of racketeering
> activity. Plaintiffs allege that Defendants engaged in wire and mail
> fraud. Wire and mail fraud require a scheme to defraud through
> fraudulent representation or omission and a use of the mail or wire to
> further that scheme. But a defendant can commit wire or mail fraud
> without actually having used the wire or mail to defraud. Rather, and as
> explained above, a defendant can be found culpable simply by entering
> into the scheme to defraud if a co-defendant's use of the mail or wire
> was reasonably foreseeable and closely related to the scheme. *Thus,
> [the defendant's] repeated argument that Plaintiffs must specifically
> allege that [it] used the mail or wire to defraud is, simply, wrong.*

*Fenner,* 298 F. Supp. 3d at 1083-84 (emphasis added). And just as here, the *Fenner*

defendants argued

> that Plaintiffs have not plausibly alleged or specifically identified
> specific uses of the mail or wire which were fraudulent. But the Sixth
> Circuit has clearly held that a RICO claim can exist even if the mailings

12

were 'innocent' or 'legally necessary.' *Frost*, 125 F.3d at 354 (internal citations omitted) … In other words, Plaintiffs do not bear the burden of pleading uses of the mail or wire that were fraudulent. They need only identify uses of the mail or wire which furthered the fraudulent scheme.

*Id.* at 1083.

The Moving Defendants also assert (summarily and in passing) that Plaintiffs fail to allege any intentionality. ([ECF No. 17], 31). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Complaint specifically alleges that Defendants' many acts of mail and wire fraud "resulted from the same or similar fraudulent and improper intent by Defendants." ([ECF No. 1] ¶ 143). This alone expressly rebuts the Moving Defendants' contention. Intent can also be inferred circumstantially. *Unencumbered Assets Tr. v. JP Morgan Chase Bank (In re Nat'l Century Fin. Enters.)*, 604 F. Supp. 2d 1128, 1150 (S.D. Ohio 2009). The Complaint taken as a whole plainly paints a picture of Defendants whose actions were a result of their conscious object of defrauding consumers. Here too, the motion lacks merit.

## 2. Plaintiffs Satisfy RICO's Proximate Cause Requirement.

The moving defendants erroneously assert, relying on *Bender*, that Plaintiffs must plead "what advertising material [upon which] Plaintiff may have relied." ([ECF No. 17], 30) (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). As previously noted, this has not been the law for some 15 years. "The

standard set out in … *Bender* includes reliance as an essential element of the claim. The Supreme Court has since ruled that reliance is not an essential element of mail and wire fraud when used as a RICO predicate offense." *Greer v. Home Realty Co. of Memphis*, No. 07-2639, 2008 U.S. Dist. LEXIS 126148, at *18 n.9 (W.D. Tenn. Aug. 7, 2008) (citing *Bridge,* 553 U.S. at 639). RICO requires that a plaintiff be injured "by reason of" a RICO violation. It does not, as Moving Defendants suggest, require that the plaintiff relied on fraudulently made statements.

RICO proximate cause is shown when "the wrongful conduct is a substantial and foreseeable cause of the injury and the relationship between the wrongful conduct and the injury is logical and not speculative." *Brown*, 546 F.3d at 357. In other words, there must be a "straight-line from the RICO violation to the plaintiffs' injuries. *GM, LLC v. FCA US, LLC*, 44 F.4th 548, 560 (6th Cir. 2022). This requirement is satisfied so long as "no 'intricate, uncertain' inquiries are required to link the defendants' alleged fraud and the plaintiffs' injuries." *Id*. (citation omitted). The "injury must be a result of the 'pattern of activity,' not the result of each separate predicate act." *Gorsuch*, 2015 U.S. Dist. LEXIS 63976, at *17 (citing *Brown*, 546 F.3d at 353; *Vild*, 956 F.2d at 567 (6th Cir. 1992)). "A plaintiff need only show use of the mail in furtherance of a scheme to defraud and an injury proximately caused by that scheme." *Wallace v. Midwest Fin. & Mortg. Servs.*, 714 F.3d 414, 420 (6th Cir. 2013).

Moving Defendants argue that Plaintiffs have not specifically linked Defendants' individual predicate acts to Plaintiffs' injuries. That is the wrong test. Plaintiffs have alleged that Defendants entered into a scheme to defraud in which the mails and wires were used, and that Plaintiffs were injured as a proximate result of that scheme. No more and no less is required. Further, "[f]act-based issues like these should not be resolved on a motion to dismiss. *Gorsuch,* 2015 U.S. Dist. LEXIS 63976, at *17 (citing, regarding RICO causation, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) (stating 'traditional proximate-cause problem[s]' like weak causal links 'will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)')). The Moving Defendants' motion should be denied here too.

### 3. Plaintiffs Do Not Allege an Enterprise Consisting of Corporation's Own Employees.

Moving Defendants argue that "a plaintiff cannot satisfy this requirement by alleging a RICO enterprise that 'merely consists of a corporate defendant associated with its own employees carrying on the regular affairs of the defendant.'" ([ECF No. 17], 33) (quoting *Manhattan Tele. Corp. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 381 (S.D.N.Y. 2001)). But that is not at all the case here; the Moving Defendants misapprehend the "distinctness" requirement which establishes that "a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Begala,* 214 F.3d at 781. This is a

textbook case in which separate entities — the defendant "persons" — are alleged to have conducted the non-defendant enterprise. The Sixth Circuit has squarely resolved this issue. "[I]ndividual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf; and [] corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity." *W. Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*, 727 F.3d 473, 492 (6th Cir. 2013). The Moving Defendants' argument is nothing more than a red herring.

### 4. Plaintiffs State a Claim Under 18 U.S.C. § 1962(d).

While the moving Defendants include a separate section ([ECF No. 17], 34) addressing 18 U.S.C. § 1962(d), their argument rests entirely on their prior assertion that the Complaint fails to address predicate acts, adding nothing further. Because Plaintiffs have alleged cognizable RICO violations, they have also alleged RICO conspiracy under Section 1962(d).

In sum, Plaintiffs have alleged that each Defendant entered into a scheme to defraud which was furthered by use of the mails and wires. They have alleged injuries which are traceable by "a straight line" to the scheme and the use of the mails and wires in furtherance thereof. This, not the set of requirements the Moving

Defendants erroneously raise, is what is required to state Plaintiffs' claims. Defendants' 12(b)(6) motion should be denied.

## C. PLAINTIFFS STATE CLAIMS UNDER THE MCPA

The Moving Defendants argue that Plantiffs have failed to state claims under the MCPA because their claims are barred by the economic loss doctrine and the "safe harbor" provision that applies to transactions that are "specifically authorized" by law. ([ECF No. 17], 36-37). The economic loss doctrine is inapplicable to this case, and though the "specifically authorized" provision is expansive, this is the rare case that falls squarely outside its ambit. These claims, too, are well-pled.

### 1. The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims.

Michigan's [economic loss] "doctrine is associated with 'transactions in goods,' not with transactions in services." *Cargill, Inc. v. Boag Cold Storage Warehouse*, 71 F.3d 545, 550 (6th Cir. 1995) (citations omitted). Michigan courts apply the doctrine where "the thrust or purpose of the plaintiffs' contracts with the defendants was not the provision of defendants' design or installation services; rather, the plaintiffs intended to acquire goods[.]" *Farm Bureau Mut. v. Combustion Research Corp.*, 662 N.W.2d 439, 444 (Ct. App. Mar. 18, 2003). In this case the thrust of the Plaintiffs' contracts was to obtain design and installation service of home solar systems. That PHS/PE also provided the physical components that made up those systems matters not.

"Michigan Courts apply the predominant factor test to determine whether a contract primarily involves the sale of goods … or the sale of services[.]" *Drummond Island Yacht Haven, Inc. v. S. Fla. Sod, Inc.*, Nos. 308274, 308483, 2014 Mich. App. LEXIS 71, at \*26-27 (Ct. App. Jan. 16, 2014) (citing *Home Ins Co v Detroit Fire Extinguisher Co, Inc*, 538 NW2d 424 (1995)). This test asks whether the primary purpose of the contract is for the sale of goods or the provision of services. *DaimlerChrysler Corp. v. Wesco Distribution*, 281 Mich. App. 240, 245, 760 N.W.2d 828, 831-32 (2008) ("Wesco's quotation of August 2, 2002, and Chrysler's August 8, 2002, purchase order make it clear that a service-repair of the capacitator bank-was the primary purpose of the parties' contract, and the provision of necessary materials was incidental to the repairs."). "This issue is generally one of fact. However, '[w]here there is no genuine issue of any material fact regarding the provision of the contract, a court may decide the issue as a matter of law.'" *J & B Sausage Co. v. Dep't of Mgmt. & Budget & Dep't of Educ.*, No. 259230, 2007 Mich. App. LEXIS 20, at \*4 (Ct. App. Jan. 4, 2007) (quoting *Frommert v Bobson Constr Co*, 219 Mich. App. 735, 738 (1996)).

The closest analog to this case in state precedent is *C&S Elec. Serv. v. Acemco*, No. 289094, 2010 Mich. App. LEXIS 1373, at \*4-5 (Ct. App. July 15, 2010). There, the Court of Appeals found that "the [] goods were merely incidental to the purpose of the contract" where

> [the plaintiff] entered into an agreement with defendant, where it agreed to construct and install 'an electrical conduit support system, press, and electrical system.' Plaintiff submitted an estimate for the design and installation of the electrical work, and defendant subsequently issued a purchase order. The electrical system consisted of goods, which were identified in the estimate and purchase order, but there is no detail regarding the specific components. It is undisputed, however, that defendant sought an electrical system with sufficient capacity for its presses and that defendant was not involved in any part of the installation. Under these circumstances, defendant was not contracting only to purchase the electrical goods, because the goods would have been of no value unless installed.

*Id.* The same is true here. Plaintiffs contracted for the design and installation of complex home solar systems for the particular purpose of saving money on their electrical bills. The pile of components — solar panels, batteries, and other electrical components — were of no use to them without proper design and installation. Indeed, PHS/PE's widespread failure to design and install these systems in a working fashion (as compared against defects in the goods themselves) is the very reason for this lawsuit. The Plaintiffs contracted for services to which the sale of goods was incidental. At absolute most, there is a question of fact about the "primary purpose" of the contract. Defendant's motion should be denied on this point.

## 2. The MCPA's Safe Harbor Provision Does Not Bar Plaintiffs' Claims.

The Moving Defendants claim that Plaintiffs cannot state claims under the MCPA because it does not apply to transactions specifically authorized by law. ([ECF No. 17], 36). But the transactions between Plaintiffs and PHS/PE were plainly not "specifically authorized" or "subject to regulation." The Moving Defendants

devote one brief paragraph to their declaration that "[r]enewable energy and solar systems, including transactions for home solar systems, are subject to regulation in Michigan." ([ECF No. 17], 37). Conspicuously absent from the Moving Defendants' memorandum or the statutes it cites are any specific authorizations or regulations related to the sale, design, and/or installation of home solar systems. Indeed, home solar installers do not even need to be licensed, a fact of which the Court may take judicial notice.[2] Thus, irrespective of the broad scope of the MCPA's "specifically authorized" exception (*see, e.g., See Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 520 (Mich. 2007)), nothing in the law can be read to bring the transactions at issue within that scope. The "general transaction" of designing, selling, and/or installing a residential solar system is not specifically authorized by Michigan law, and the MCPA therefore applies to Plaintiffs' claims.

### D. PLAINTIFFS HAVE NOT FAILED TO NAME A NECESSARY PARTY

In summary fashion, the Moving Defendants argue that the claims against them should be dismissed because Plaintiffs have not raised claims against Power Home Solar, LLC ("PHS/PE") (nor does any Defendant). The Moving Defendants, by shotgun approach, claim that PHS/PE is a necessary party under each of the Rule

---

[2] *See* Detroit News, June 22, 2021 https://www.detroitnews.com/story/opinion/editorials/2021/06/22/editorial-new-licensing-mandate-wrong-direction-state/7768950002/ (last visited Mar. 8, 2023).

19(a)(1) factors, but fail to provide analysis under any of them. Nor do they meaningfully attempt to bridge the gap from a finding of a necessary party to the remedy of dismissal under Rule 12(b)(7). Even if PHS/PE were a necessary party, which it is not, "the court then considers whether joinder is feasible. If joinder is not feasible, the court must weigh the equities to determine if the case should continue in the party's absence or should be dismissed." *Turunen v. Creagh*, No. 2:13-CV-106, 2016 U.S. Dist. LEXIS 43158, at *4 (W.D. Mich. Mar. 31, 2016) (citations omitted). Were it necessary and proper, PHS/PE could readily be joined to this case because it arises out of PHS/PE's business activities in Michigan. *See* MCL § 600.715. This argument, like the Moving Defendants' others, is entirely without merit.

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The Moving Defendants do not offer a single reason why the Court could not accord complete relief among existing parties in the absence of

PHS/PE. Nor do they offer any reason that disposing of these claims in PHS/PE's absence would impair or impede PHS/PE's interests or leave any existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations.

While it is not possible to respond to arguments that have not been raised, it is difficult to imagine any basis the Moving Defendants might have for such an argument. The claims in this case are for monetary damages, whereby complete relief may be had against the presently named Defendants. Nothing that occurs here will dispose of any of PHS/PE's interests. It is inconceivable that Defendants would be subjected to duplicative liability based on PHS/PE's absence.

Here again, the Moving Defendants' failure to grasp RICO results in their raising a fatally flawed argument. PHS/PE is the "enterprise" which in the RICO context not only can, but *must* be separate from the defendant persons.

> A RICO 'person' can be either an individual or a corporation… A RICO 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity… The enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable.

*In re ClassicStar Mare Lease, Litig.*, 727 F.3d at 490 (citations omitted). "The 'person'—not the 'enterprise'—is the party who may be named as the defendant in a civil RICO claim based on a substantive violation of § 1962(c)." *Palatkevich v.*

*Choupak*, 2014 U.S. Dist. LEXIS 10570, at *35-37 (S.D.N.Y. Jan. 24, 2014). "[B]y virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)" *Id.* (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994)). Indeed, "an assertion that a corporate defendant 'person' violated § 1962(c) fails where the plaintiff names the same corporate defendant as the 'enterprise.'" *Palatkevich*, U.S. Dist. LEXIS 10570 at *37 (citing *Bennett v. U.S. Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir. 1985)).

The Moving Defendants take issue with the fact that PHS/PE is referenced throughout the Complaint. Of course it is. PHS/PE is the RICO enterprise whose affairs the Defendant persons conducted and/or participated in. This is how RICO operates. And because the enterprise is not subject to liability, there would be no reason for Plaintiffs to name it as a Defendant. But even if it were, "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party." *State Farm Mut. Ins. Co. v. Elite Health Ctrs., Inc.*, No. 16-13040, 2017 U.S. Dist. LEXIS 82736, at *16 (E.D. Mich. May 31, 2017) (quoting *Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990)). Here again, the Moving Defendants' motion must be denied.

## CONCLUSION

At every turn, the Moving Defendants' motion fails to grasp how RICO actually operates in the context of jurisdiction, substance, and appropriate parties. It also seeks application of two barriers to Plaintiffs' MCPA claims that have no bearing under the facts alleged. Plaintiffs have stated claims under 18 U.S.C. § 1962(c) and (d) as well as the MCPA. The Moving Defendants' motion to dismiss those claims should be denied.

Date: March 8, 2023               Respectfully submitted,

<div style="margin-left: 40%;">

s/ Nicholas A. Coulson_____
Steven D. Liddle
Nicholas A. Coulson
Lance Spitzig
**LIDDLE SHEETS COULSON P.C.**
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015
E: sliddle@lsccounsel.com
E: ncoulson@lsccounsel.com

*Attorneys for Plaintiffs and the*
*Putative Class*

</div>

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 8, 2023, I served a copy of the foregoing with the Clerk of Court using the Court's ECF system, which will send notification of such filing to all counsel of record.

<div align="right">

By _s/_ Nicholas A. Coulson

</div>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AARON HALL, KATHERINE GLOD, and JEFFREY BINDER, on behalf of themselves and all others similarly situated, | **Case No.: 4:22-cv-12743-LJM-CI**<br><br>**Honorable Laurie J. Michelson** |
| Plaintiff | |
| vs | |
| TRIVEST PARTNERS L.P., TGIF POWER HOME INVESTOR, LLC, and WILLIAM JAYSON WALLER | |
| Defendants | |

---

### BRIEF FORMAT CERTIFICATION

---

I, Nicholas A. Coulson, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☐ (N/A) the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

By _s/_ Nicholas A. Coulson

Dated: March 8, 2023