UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HALL, *et al.*,

    Plaintiffs,

v.

TRIVEST PARTNERS, L.P., *et al.*,

    Defendants.
_____ /

Case No. 22-12743

F. Kay Behm
United States District Judge

**OPINION AND ORDER GRANTING MOTION FOR**
**CERTIFICATE OF APPEALABILITY (ECF No. 34)**

**I.   PROCEDURAL HISTORY**

Plaintiffs filed this RICO action on November 12, 2022. (ECF No. 1). Defendants Trivest Partners L.P. and TGIF Power Home Investor, LLC filed a motion to dismiss the complaint on February 15, 2023. (ECF No. 17). The court granted in part and denied in part that motion in an Opinion and Order dated September 12, 2023 (Opinion and Order). (ECF No. 32). This matter is now before the court on Defendants' motion to certify the issue of whether this court has personal jurisdiction over Trivest Partners and TGIF Power Home Investor under 18 U.S.C. § 1965(b) to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1291(b). (ECF No. 34). This matter is fully briefed. (ECF Nos. 36, 38).

For the reasons set forth below, the motion is **GRANTED**.

1

## II.     FACTUAL BACKGROUND

### A.     The Complaint

Plaintiffs filed this action against Defendants Trivest, TGIF, and William Jayson Waller.  (ECF No. 1).  Plaintiffs allege that the three Defendants violated RICO through a pattern of racketeering activity involving their conduct with Power Home Solar, LLC (PHS), also known as Pink Energy (PE).  *Id*.  The Complaint outlines an allegedly fraudulent scheme designed to lure consumers into purchasing home solar systems to be designed, installed, and sold by PHS/PE, and which was carried out by Defendants through multiple uses of the mail and wires.  *Id*.  The scheme included numerous false and misleading advertisements, training materials, and other communications designed to achieve its goals.

Trivest is a private investment limited partnership organized under the laws of Florida with its principal place of business in Florida.  (ECF No. 1, ¶ 13).  TGIF is a limited liability company organized under the laws of Delaware with its principal place of business in Florida.  *Id*. at ¶ 4.[1]  Plaintiffs allege that Trivest, through TGIF, purchased an approximately 25% stake in PHS and that Trivest took a "hands-on role in managing all aspects of the business along with Defendant Waller."  (ECF

---

[1] According to Defendants, TGIF is part of the Trivest Growth Investment Fund. See https://www.trivest.com/wp-content/uploads/2021/11/TGIF_Overview.pdf.  The fund makes non-control, minority investments in fast-growing founder- and family-owned businesses.  *Id*.

2

No. 1, ¶¶ 7, 62). The Complaint alleges that this "hands-on role" included providing financial support for and participating in PHS's massive advertising campaign. *Id*. at ¶ 7; *see also id.* at ¶ 71 ("Trivest, including but not exclusively through its subsidiary TGIF, participated in the management of PHS's marketing sales, and business as a whole.").

Plaintiffs each purchased a home solar system from PHS. (ECF No. 1, ¶¶ 90-92). Plaintiffs contend that PHS represented that their systems would reduce electricity bills between 70% and 90% and they would, in many instances, receive government rebate checks to cover part or all of the purchase costs. *Id*. at 36. Plaintiffs allege that they relied on PHS's representations related to "expected production and functionality" of the systems when making their financed purchases. *Id*. at ¶¶ 90-92. 93. Yet, after the systems were installed, it became apparent that the systems were not functioning as they were supposed to. *Id.* at ¶ 93. Plaintiffs' electricity bills were not reduced in any amount near 70-90%, if at all, and in some instances their electricity bills actually increased. *Id*. at ¶ 94. The Complaint alleges that Defendants knew that customers' electric bills were not being reduced by anywhere near the promised numbers, because it had access to real-time monitoring information about their Systems' production. *Id*. at ¶ 95. When the Plaintiffs complained to PHS about these issues, they were informed

that the problems were remediable and would be resolved, but the systems could not be fixed because they were improperly designed and installed.  *Id*. at ¶¶ 97-98.

The Complaint alleges that Trivest and TGIF committed "countless acts of mail and wire fraud" through PHS by causing PHS to send out false, misleading, and fraudulent advertisements, communications, training materials, and instructions through the mail and wires (via internet, telephone and fax).  *Id*. at ¶ 72.  The Complaint goes on to describe how PHS, at the direction of Defendant Waller and with the involvement of Trivest and TGIF, posted thousands of misleading advertisements.  *Id.* at ¶¶ 73-79.

B.   The Court's Opinion and Order Regarding Personal Jurisdiction

In the Opinion and Order, among other issues, the court analyzed whether it has personal jurisdiction over Defendants pursuant to § 1965(b).  In RICO cases, "[Section] 1965(b) extends personal jurisdiction through nationwide service of process over 'other parties residing in any other district,' as long as venue is proper through [Section 1965](a) with that initial defendant and the 'ends of justice' require it." *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440 (6th Cir. 2022).  Finding jurisdiction over the moving Defendants only "requires at least one defendant with traditional forum state contacts … such that any number

4

of defendants from other districts may be joined under § 1965(b)." *Id*. at 441. Defendants contended that Plaintiffs were required to establish that no other district can host the litigation and failed to do so. The court noted that several district courts within this circuit have analyzed the parameters of "the ends of justice," noting a split in the circuits: one circuit found that a RICO plaintiff must show that there is no other district that would have personal jurisdiction over all the defendants, *see Doe v. Varsity Brands, LLC*, 2023 WL 4935933 (N.D. Ohio Aug. 2, 2023) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)) but the Tenth Circuit rejected this notion, concluding that the "'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum." *Id*. (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1232 (10th Cir. 2006)). The *Varsity Brands* case and *Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, 2010 WL 819063, at *5 (N.D. Ohio Mar. 9, 2010) both adopted the Tenth Circuit's standard, finding its reasoning for disagreeing with the Ninth Circuit persuasive:

> In so holding, the Tenth Circuit cited persuasive evidence that Congress modeled RICO § 1965(b) on antitrust laws that "prescribe[d] an 'ends of justice' analysis for allowing 'other parties' to be summoned before the court, 'whether they reside in the district in which the court is held or not.'" *Id*. at 1232 (quoting 15 U.S.C. §§ 5 (Sherman Act), 10 (Wilson Tariff Act), & 22 (Clayton Act)). The Tenth Circuit also noted that it would be

5

> inconsistent with RICO's purpose of "eradicat[ing] organized crime" to force a RICO plaintiff to litigate in an inconvenient judicial district "whenever organized criminals operate within the same locale and cause harm in a distant state." *Id*. at 1232.

*Varsity Brands*, at *15 (quoting *Rexam*, *5). In the Opinion and Order, this court agreed with the reasoning in *Varsity Brands* and *Rexam* and followed the Tenth Circuit's standard. Thus, the court concluded that merely because there is a district in which the court may have personal jurisdiction over all the defendants does not mean that commencing litigation in this district necessarily violates the "interests of justice." The court then weighed the factors identified in *Rexam* and concluded that, on balance, the interests of justice factors weigh in favor of retaining the litigation in this jurisdiction. Accordingly, the court declined to dismiss the action for lack of personal jurisdiction.

### III. ANALYSIS

Generally, 28 U.S.C. § 1291 allows for appeals only from "final decisions of the district courts of the United States." However, pursuant to 28 U.S.C. § 1292(b), a district court may permit a party to file an appeal of a non-final order if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

termination of the litigation." The moving party bears the burden to show that each requirement of § 1292(b) is satisfied. *In re Flint Water Cases*, 627 F. Supp. 3d 734, 737 (E.D. Mich. 2022) (citing *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013)). The district court must then "expressly find in writing that all three § 1292(b) requirements are met. *Id.* (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). It is generally noted that interlocutory appeals are to be permitted "only in exceptional circumstances." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002); *Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966) ("Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional circumstances where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.").

     Defendants sought to dismiss the complaint for lack of personal jurisdiction in this forum under 18 U.S.C. § 1965(b). In the Opinion and Order, the court rejected Defendants' argument that Plaintiffs cannot satisfy the "ends of justice" requirement under 18 U.S.C. § 1965(b) because Plaintiffs have not adequately pleaded a RICO claim and have failed to show that no other district can host the litigation. (ECF No. 32, PageID.301-05). The court also acknowledged the split in

7

the circuits on this issue and chose to follow the standard adopted by the Tenth Circuit Court of Appeals. *Id*. at PageID.304.

In support of its motion, Defendants contend that the present dispute satisfies the standard for certification of interlocutory appeal found in § 1292(b) because (1) a controlling legal question is involved; (2) there is substantial ground for difference of opinion regarding it; and (3) an immediate appeal would materially advance the litigation's ultimate termination. *Rafoth v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 (6th Cir. 1992). The court will address the three requirements below.

    A.    <u>Existence of a Controlling Issue of Law</u>

In determining whether to certify an issue for interlocutory appeal, it must first be found that the relevant issue is "controlling." 28 U.S.C. § 1292(b). The Sixth Circuit has generally set a low bar for determining that a question of law is "controlling" in the context of a motion for certification under § 1292(b), and it must only be shown that the question could "materially affect the outcome of the case." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875-76 (E.D. Mich. 2012); *see also In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds by* 937 F.2d 44 (1991) ("the resolution of an issue need

8

not necessarily terminate an action" or "have precedential value for a number of pending cases" to be "controlling"); *Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litigation)*; 673 F.2d 1020, 1026 (9th Cir. 1981) ("all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.")).

Defendants' interlocutory appeal centers on the court's construction of the statutory phrase "interests of justice" in 18 U.S.C. § 1965(b). An issue of "statutory interpretation is a question of law." *Johnson v. United States*, 64 F.4th 715, 721 (6th Cir. 2023). Defendants argue that this question of law is controlling as to this litigation generally "because [its] resolution could materially affect the outcome of the case." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). And, Defendants assert, that question of law was controlling as to the Opinion and Order specifically because it was a key analytical point in resolving Defendants' motion to dismiss. In response, Plaintiffs argue that Defendants have not satisfied this prong of the test because their analysis of the issue was cursory, at best. More specifically, Plaintiffs contend that Defendants fail to explain how an interlocutory appeal could materially affect the outcome of the litigation.

As Defendants point out the bar on this question is low and "all that must be shown in order for a question to be controlling is that resolution of the issue

9

on appeal could materially affect the outcome of the litigation in the district court." *In re Baker & Getty*, 954 F.2d at 1172; *see also* Wright, Federal Practice & Procedure § 3930 (3d ed.) ("A steadily growing number of decisions . . . have accepted the better view that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants."). The question of whether the Ninth Circuit standard should be followed instead of the Tenth Circuit standard as this court concluded would materially affect whether this proceeding could continue in this court against these Defendants. If the Sixth Circuit were to disagree with this court's conclusion, it would likely result in a dismissal of this action against Defendants Trivest and TGIF Home Power. Accordingly, the court finds that Defendants have sufficiently identified a controlling question of law for purposes of § 1292(b).

    B.    <u>Substantial Ground for Difference of Opinion</u>

To determine whether a "substantial ground for a difference of opinion" exists as to the issues raised in an interlocutory appeal, a court must look to whether: "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a

10

difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *Newsome*, 873 F. Supp. 2d at 876-77 (citations omitted).

The court finds that there is a substantial ground for difference of opinion given both the circuit split identified in the Opinion and Order and the district court split within the Sixth Circuit identified by Defendants. *See Anthony v. Over*, 2023 WL 6307960, *3 (E.D. Tenn. Sept. 27, 2023) (following the Tenth Circuit's approach); *Enginetec Corp. v. Boutin*, 2008 WL 11380215, *4 (N.D. Ohio Dec. 5, 2008) (following the Ninth and Second Circuits' approach); *High Adventure Ministries, Inc. v. Tayloe*, 309 F. Supp. 3d 461, 472-73 (W.D. Ky. 2018) (explaining that "courts have declined to exercise personal jurisdiction under the nationwide service of process available for RICO claims if there is a district where venue is proper as to every RICO defendant, without resort to § 1965."). Accordingly, the court concludes that the second prong of the § 1292(b) test is satisfied because of the circuit split, the varying opinions in the district courts within the Sixth Circuit, and because the question has not yet been answered by the Sixth Circuit Court of Appeals. *See In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (finding a substantial ground for difference of opinion when "a difference of opinion exists within the controlling circuit; or [ ] the circuits are split on the question" and it is a question that the circuit in question has not answered).

### C. Appeal Would Materially Advance the Ultimate Termination of the Litigation

Finally, the court must address whether an interlocutory appeal at this stage in the proceedings would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An appeal "materially advances the litigation" when it "save[s] judicial resources and litigant expense." *Newsome*, 873 F. Supp. 2d at 878 (citing *West Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 872, 878 (E.D. Mich. 2012)). "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Id.* (citing *City of Dearborn v. Comcast of Michigan III, Inc.*, No. 08-10156, 2008 WL 5084203, at *1 (E.D. Mich. Nov. 24, 2008) (quoting *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997))).

As addressed above, a finding that the court lacks personal jurisdiction would materially affect the outcome of the case, resulting in dismissal of the claims against these Defendants. At this stage, there has been minimal discovery completed, as the parties do not yet have a scheduling order setting the required dates and deadlines. Allowing an interlocutory appeal at this time would "promote judicial economy by settling [this] highly contested question[] before – potentially needlessly – occupying the Court's and parties' time and attention."

*Newsome*, 873 F. Supp. 2d at 876. As such, the third prong of the test is also satisfied.

Plaintiffs' reliance on cases finding this prong unsatisfied where the matter would not lead to termination, but instead, would result in a transfer of venue or remand to state court are inapposite. *See e.g.*, *C.T. v. Red Roof Inns, Inc.*, 2022 WL 18003292 (S.D. Ohio Dec. 30, 2022); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705713 (N.D. Ohio Dec. 14, 2020). Here, Defendants have not sought a transfer of venue. Instead, they seek dismissal of all claims against them based on a lack of personal jurisdiction. Such a ruling in their favor would materially advance the termination of this litigation against them. *See e.g.*, *Tieszen v. eBay, Inc.*, 2022 WL 79820, at *2 (D.S.D. Jan. 6, 2022) (Court found that certification would materially advance the ultimate termination of the litigation because, if the Court of Appeals disagrees with the district court on the issue of personal jurisdiction, the moving defendant would be dismissed, and the case greatly simplified.); *Gilmore v. Jones*, 2019 WL 4417490, at *7 (W.D. Va. Sep. 16, 2019) (certifying decision on defendants' Rule 12(b)(2) motion to dismiss to implicate a controlling question of law because whether the Fourth Circuit affirmed or denied the district court's holding on personal jurisdiction could result in the dismissal of the action except

for one defendant). Accordingly, the court finds that Defendants have satisfied the third prong.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for certificate of appealability.

**SO ORDERED**.

Date: February 16, 2024

s/F. Kay Behm
F. Kay Behm
United States District Judge