UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HALL, *et al.*,

    Plaintiffs,

v.

TRIVEST PARTNERS, L.P., *et al.*,

    Defendants.

_____ /

Case No. 22-12743

F. Kay Behm
United States District Judge

**OPINION AND ORDER ON DEFENDANT WALLER'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 37) AND REQUEST TO DEFER DECISION (ECF No. 52)**

**I.    PROCEDURAL HISTORY**

Plaintiffs filed this RICO action on November 12, 2022. (ECF No. 1). Defendant William Jayson Waller filed a motion for judgment on the pleadings, alleging a lack of personal jurisdiction. (ECF No. 37). Plaintiffs filed a response along with two supporting declarations. (ECF Nos. 40, 41, 42). Waller filed a reply. (ECF No. 43). On April 16, 2024, the day before the scheduled hearing on the motion for judgment on the pleadings, Waller filed a request to defer the decision on his motion pending the appeal of the court's decision on personal jurisdiction under RICO for Defendants Trivest and TGIF. (ECF No. 52). The court held a hearing on April 17, 2024 on the motion and Waller's deferral request.

For the reasons set forth below, the court **DENIES** the request to defer a decision on the motion for judgment on the pleadings and also **DENIES** the motion for judgment on the pleadings and finds that Plaintiffs have established personal jurisdiction over Waller.

## II. FACTUAL BACKGROUND

Plaintiffs filed this action against Defendants Trivest, TGIF, and Waller. (ECF No. 1). Plaintiffs allege that the three Defendants violated RICO through a pattern of racketeering activity involving their conduct with Power Home Solar, LLC (PHS), also known as Pink Energy (PE). *Id*. Waller founded PHS/PE in 2014 and was its CEO and largest shareholder. *Id.* at ¶ 20. Waller designed PHS's sales practices. *Id*. at ¶ 23. The Complaint outlines an allegedly fraudulent scheme designed to lure consumers into purchasing home solar systems to be designed, installed, and sold by PHS/PE, and which was carried out by Defendants through multiple uses of the mail and wires. *Id*. at ¶ 20. The scheme included numerous false and misleading advertisements, training materials, and other communications designed to achieve its goals. The Complaint alleges that Waller was personally responsible for the development and administration of the intentionally misleading training and false advertising. *Id*. at ¶ 32; *see also id*. ¶¶ 34, 35.

Plaintiffs each purchased a home solar system from PHS. *Id*. at ¶¶ 90-92. Plaintiffs contend that PHS represented that their systems would reduce electricity bills between 70% and 90% and they would, in many instances, receive government rebate checks to cover part or all of the purchase costs. *Id*. at 36. Plaintiffs allege that they relied on PHS's representations related to "expected production and functionality" of the systems when making their financed purchases. *Id*. at ¶¶ 90-93. Yet, after the systems were installed, it became apparent that the systems were not functioning as they were supposed to. *Id.* at ¶ 93. Plaintiffs' electricity bills were not reduced in any amount near 70-90%, if at all, and in some instances their electricity bills actually increased. *Id*. at ¶ 94. The Complaint alleges that Defendants knew that customers' electric bills were not being reduced by anywhere near the promised numbers, because it had access to real-time monitoring information about their Systems' production. *Id*. at ¶ 95. When the Plaintiffs complained to PHS about these issues, they were informed that the problems were remediable and would be resolved, but the systems could not be fixed because they were improperly designed and installed. *Id*. at ¶¶ 97-98.

The Complaint alleges that Waller committed "countless acts of mail and wire fraud" through PHS by causing PHS to send out false, misleading, and

fraudulent advertisements, communications, training materials, and instructions through the mail and wires (via internet, telephone and fax). *Id*. at ¶ 61. The Complaint goes on to describe how PHS, at the direction of Defendant Waller and with the involvement of Trivest and TGIF, posted thousands of misleading advertisements. *Id.* at ¶¶ 73-79.

III. ANALYSIS

    A. <u>Request to Defer Decision</u>

Waller asks the court to defer a decision on his motion for judgment on the pleadings until the Sixth Circuit has decided the pending interlocutory appeal on the issue of whether this court has personal jurisdiction over his co-defendants under the RICO statute, 18 U.S.C. § 1965(b). (*See* ECF No. 49). The court previously denied Plaintiffs' request for a Rule 16 scheduling conference based on the pendency of the motion for judgment on the pleadings and the appeal. (ECF No. 50). The court noted, however, that it would revisit this issue once a decision on the motion for judgment on the pleadings was decided. *Id*. As discussed in detail below, the court denies Waller's motion for judgment on the pleadings and concludes that the court has personal jurisdiction over Waller under Michigan's long-arm statute. Though the appeal remains pending, the court finds no basis to

further delay moving this matter forward and **DENIES** the request to defer the decision.

  B.  <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal of a case for lack of personal jurisdiction. When considering a motion under Rule 12(b)(2), the court may: (1) decide the motion upon the affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Regardless of which method the court chooses, the plaintiff bears the burden of establishing that the court can exercise personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The weight of this burden, however, depends on whether the court decides to rule on the parties' written submissions alone or to hear evidence. *Id.* Where, as here, the court decides a motion without an evidentiary hearing, the plaintiff must make only a prima facie showing that personal jurisdiction exists to defeat dismissal. *Anwar v. Dow Chem. Co.*, 867 F.3d 841, 847 (6th Cir. 2017). This burden is "relatively slight." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 116 (6th Cir. 1988)). The pleadings and

5

affidavits must be viewed in the light most favorable to the plaintiff, and the court should not weigh any contrary assertions offered by the defendant. *AlixPartners, LLP v. Brewington,* 133 F. Supp. 3d 947, 954 (E.D. Mich. 2015) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005)).

    C.    <u>The Court's September 23, 2023 Opinion and Order (ECF No. 32)</u>

Defendants Trivest and TGIF Power previously moved to dismiss, in part, based on a lack of personal jurisdiction. In the September 23 Opinion and Order, among other issues, the court analyzed whether it has personal jurisdiction over Defendants Trivest and TGIF Power pursuant to § 1965(b). In RICO cases, "[Section] 1965(b) extends personal jurisdiction through nationwide service of process over 'other parties residing in any other district,' as long as venue is proper through [Section 1965](a) with that initial defendant and the 'ends of justice' require it." *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 440 (6th Cir. 2022). Finding jurisdiction over the moving Defendants only "requires at least one defendant with traditional forum state contacts … such that any number of defendants from other districts may be joined under § 1965(b)." *Id*. at 441. In the context of that motion to dismiss, none of the parties disputed that this court had personal jurisdiction over Defendant Waller, and thus, the court did not decide that issue. (ECF No. 32). Only after the court issued its decision finding

6

that the court had personal jurisdiction over Trivest and TGIF Power pursuant to RICO § 1965(b), did Waller move to dismiss based on a lack of personal jurisdiction. (ECF No. 37).

### D. Michigan's Long-Arm Statute

Two Michigan long-arm statutes govern when a Michigan forum may assert personal jurisdiction over a non-resident individual. *Unistrut Corp. v. Baldwin*, 815 F. Supp. 1025, 1027 (E.D. Mich. 1993). The first addresses general personal jurisdiction. *Id*. (citing Mich. Comp. Laws § 600.701). The second addresses specific or limited personal jurisdiction. *Id*. (citing Mich. Comp. Laws § 600.705). General jurisdiction exists when the plaintiff's cause of action is unrelated to the defendant's in-state activities. *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984)). Specific jurisdiction exists when the plaintiff's cause of action arises out of the defendant's contacts with the forum. *Id*. (citing *Hall*, 466 U.S. at 414 n. 8). Michigan's general personal jurisdiction statute is limited to three circumstances: the defendant's presence in the state when process is served; the defendant's domicile in the state at the time process

is served; and consent. Mich. Comp. Laws § 600.701(1)-(3). None of these circumstances apply here.[1]

Thus, the court must turn to the limited jurisdiction requirements of the Michigan long-arm statute, which provide that the court may exercise personal jurisdiction over a defendant where his acts "arise out of" certain relationships, including (1) the transaction of any business in the state; (2) the doing or causing an act to be done, or consequences to occur in the state resulting in a tort action; (3) the ownership, use or possession of real or tangible property located within the state. Mich. Comp. Laws § 600.705(1)-(3).[2] Michigan's long-arm statute allows Michigan courts to exercise jurisdiction to the full extent allowed by the federal due process requirements. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

---

[1] Waller's reply seems to suggest that Plaintiffs argue that this court has general personal jurisdiction over Waller because his wife owned property in Michigan and he resided in Michigan at some point in the past. To the extent there is any attempt to meet the general jurisdiction statute, even if true, nothing in the complaint suggests that Waller was domiciled in Michigan at the time he was served with the summons and complaint in this matter, as required by the general jurisdiction long-arm statute. Indeed, the complaint specifically alleges that he is a resident of North Carolina (ECF No. 1, ¶ 15) and he was served at his residence in North Carolina. (ECF No. 13-1). Accordingly, the general jurisdiction long-arm statute is not applicable based on the ownership of property at some point in the past.

[2] Below, the court finds that Plaintiffs establish personal jurisdiction over Waller under subsections (1) and (2) of § 600.705, the court need not address whether subsection (3) is satisfied.

### 1. Transaction of business in Michigan

The Michigan Legislature's "use of the word 'any' to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504–05 (6th Cir. 2014) (quoting *Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424 (2001)); *see also Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). The parties disagree on whether Plaintiffs have shown that Waller transacted any business in State of Michigan and that the claims in this case arise from that business. As explained below, the court finds that Plaintiffs have established limited personal jurisdiction over Waller under § 600.705(2).

According to Waller, Plaintiffs have only shown that PHS the corporation – not Waller the individual – have made minimum contacts with the state of Michigan. That is, Waller argues that Plaintiffs attempt to merge Waller and non-party PHS as one and the same. Waller cites *Cunningham v. Local Lighthouse Corp.*, 2017 WL 4053759 (M.D. Tenn. Aug. 7, 2017) and *Balance Dynamics Corp. v. Schmitt. Indus.*, Inc., 204 F.3d 683, 698 (6th Cir. 2000) in support of his argument. As the Sixth Circuit explained in *Balance Dynamics*, while it is true that "jurisdiction over the individual officers of a corporation cannot be predicated

merely upon jurisdiction over the corporation," the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity <u>does not</u> preclude the exercise of personal jurisdiction over those defendants. *Balance Dynamics Corp*, 204 F.3d at 698 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). Instead, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id.*

Here, however, while Waller is *now* out-of-state, Plaintiffs have offered evidence that he both resided in Michigan and conducted business in Michigan at the time of the events giving rise to the complaint and that the business he conducted gives rise to the allegations in the complaint. According to Plaintiffs, Waller transacted business within Michigan each time he perpetuated his scheme through PHS from his home office in Birmingham, Michigan and his business office in Troy, Michigan. More specifically, Plaintiffs offer the declaration of a former PHS employee, David Lewenz, who avers that Waller's primary residence was in Birmingham, Michigan from 2017 to 2020 and Waller would regularly work

10

from his home office there. (ECF No. 41, ¶ 4).³ Additionally, Lewenz avers that Waller worked in PHS's primary office in Troy, Michigan. *Id*. at ¶ 5. Plaintiffs also contend that Waller transacted business in Michigan when he caused countless false and misleading advertisements that originated within Michigan to Michigan residents, for solar systems to be installed in Michigan. According to Lewenz, Waller's work in Michigan in the 2018-2020 time frame included the oversight of PHS's advertising campaigns, on which Plaintiffs' claims are based. *Id*. at ¶ 6.

In the court's view, Waller's reliance on *Balance Dynamics* and *Cunningham* is misplaced because neither of those cases involved a defendant who lived and worked in the forum state and where the causes of action at issue arose from the defendant's activities in the forum state while he lived and worked there. Here, there is unrebutted evidence that Waller conducted business as the CEO of PHS while he resided in the State of Michigan and that events in the complaint arose from that conduct. Thus, Plaintiffs have satisfied their burden of establishing personal jurisdiction under § 600.705(1). *See e.g.*, *Karanja v. Woodbridge Corp.*, 2017 WL 5192255, at *2 (E.D. Mich. Nov. 9, 2017) (The fact that individual

---

³ Waller indicates in his reply that if the court considers the declarations submitted by Plaintiffs, he asks the court for jurisdictional discovery. (ECF No. 43, PageID.516, n. 1). However, Waller has not indicated what discovery he would require and it seems to the court that information pertinent to personal jurisdiction would be within his base of knowledge and could have been presented with the reply.

defendant worked in the state of Michigan while employed by the corporate defendant and the action arose from an act which allegedly occurred while the individual defendant was working in Michigan, the court held that the individual defendant conducted "slightest act of business" in the state sufficient to satisfy personal jurisdiction.).

2. *Commission of tortious conduct in Michigan*

Mich. Comp. Laws § 600.705(2) allows Michigan courts to exercise jurisdiction over a party who has "[done or caused] an act to be done, or consequences to occur, in the state resulting in an action for tort." *Brown, Tr. of Est. of Brown v. Handysides*, 2024 WL 1334307, at *2 (E.D. Mich. Mar. 28, 2024). Under this subsection, "either the tortious conduct or the injury must occur in Michigan." *Green v. Wilson*, 565 N.W.2d 813, 817 (Mich. 1997). Courts interpret "consequence" to mean "the tort claim itself[,] and it must arise within Michigan as a result of the defendant's extra-territorial action." *Mulo v. Gottlieb*, 2017 WL 1132335, at *2 (E.D. Mich. Mar. 27, 2017). Any "adverse economic effect" on a Michigan plaintiff is enough. *Neogen Corp.*, 282 F.3d at 889. Notably, "[a] defendant may not commit tortious acts in Michigan, and then move or flee to another state, thereby avoiding answering for those acts in Michigan." *Karanja*, at *2.

Again, as explained in more detail above, Plaintiffs offer unrebutted evidence that Waller committed the allegedly tortious conduct giving rise to the claims in the complaint while he resided and worked in State of Michigan. (*See* ECF No. 41). Accordingly, Plaintiffs have met their burden of establishing personal jurisdiction over Waller under § 600.705(2).

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the request to defer a decision on the motion for judgment on the pleadings and also **DENIES** Defendant Waller's motion for judgment on the pleadings and finds that Plaintiffs have established personal jurisdiction over Waller.

**SO ORDERED**.

Date: April 18, 2024                               s/F. Kay Behm
                                                   F. Kay Behm
                                                   United States District Judge