UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HALL, *et al.*,                          Case No. 22-12743

             Plaintiffs,               F. Kay Behm
     v.                                       United States District Judge

TRIVEST PARTNERS, L.P., *et al.*,

             Defendants.
_____ /

**OPINION AND ORDER ON MOTIONS TO
COMPEL ARBITRATION (ECF Nos. 70, 75, and 102)**

**I.     PROCEDURAL HISTORY**

Defendant Jayson Waller and Defendants TGIF Home Investor, LLC and

Trivest Partners, LP (the "Trivest Defendants") have moved to compel arbitration.

(ECF Nos. 70, 75). Plaintiffs oppose these motions, arguing that Defendants, by

engaging in this litigation for nearly two years, have waived their right to seek

arbitration.  (ECF Nos. 78, 79, 83, 84). The court agrees and **DENIES** Waller and the

Trivest Defendants' motions to compel arbitration for the reasons explained

below.

Seven additional Trivest Defendants (referred to as the "New Trivest

Defendants") were added to this action when Plaintiffs amended their complaint.

They separately moved to compel arbitration and to dismiss the complaint. The

1

court also **DENIES** the New Trivest Defendants' motion, because they are

nonsignatories to the agreements and may not invoke equitable estoppel to

enforce them, as more fully explained below.

## II.    FACTUAL BACKGROUND

Plaintiffs allege that Defendants[1] violated RICO through their control of

Power Home Solar, LLC (PHS) (also known as Pink Energy (PE)) through a pattern

of racketeering activity. (ECF No. 96). The Amended Complaint details a

fraudulent scheme designed to lure consumers into purchasing home solar

systems to be designed, installed, and sold by PHS/PE, and which was carried out

by Defendants through multiple uses of the mail and wires. *Id*. The scheme is

alleged to include countless false and misleading advertisements, training

materials, and other communications designed to achieve its ends. *Id*.

The Amended Complaint alleges that the Defendants committed "countless

acts of mail and wire fraud" through PHS by causing PHS to send out false,

misleading, and fraudulent advertisements, communications, training materials,

and instructions through the mail and wires (via internet, telephone and fax). *Id*.

at ¶¶ 68, 92. The Amended Complaint goes on to describe how PHS, at the

---

[1] For purposes of this Factual Background, "Defendants" and the "Trivest Defendants" include the New Trivest Defendants.

2

direction of Defendant Waller and with the involvement of the Trivest

Defendants, posted thousands of misleading advertisements. *Id*. at ¶¶ 93-99. The

Amended Complaint alleges that these advertisement campaigns were conceived,

designed, and created by Defendant Waller with the direct involvement and

participation of the Trivest Defendants, who provided funding, guidance, and

oversight for the campaign. *Id*. at ¶ 95.

The Purchase and Installation Agreements contain the following language

regarding individual arbitration:

> **13. Arbitration of Disputes**
> **BY SIGNING THIS AGREEMENT, CONTRACTOR AND**
> **BUYER AGREE TO RESOLVE ANY AND ALL DISPUTES**
> **THROUGH BINDING ARBITRATION, AND EACH PARTY**
> **WAIVES ANY RIGHT TO PARTICIPATE IN CLASS**
> **ACTIONS, ALL AS DETAINED IN, AND SUBJECT TO, THE**
> **"ARBITRATION AGREEMENT" ATTACHED HERETO AS**
> **EXHIBIT E, WHICH SHALL BE SIGNED BY THE PARTIES AS**
> **OF THE DATE HEREOF.**

(ECF No. 75, Ex. 1, p. 9; Ex. 2, p. 11; Ex. 3, p. 9). Plaintiffs acknowledge that PHS's

standard arbitration and class waiver provision is identical across all three

contracts, except that it appears as Exhibit F in the Binder agreement and Exhibit

E in the others. (ECF No 70-1, PageID.919; PageID.943; PageId.970). The Sales

Agreements were not annexed to Plaintiffs' Complaint and were produced by

Plaintiffs in discovery on August 7, 2024. Defendants maintain that they had not

3

seen the agreements before the August 7, 2024 production. Defendant Waller

brought his motion to compel arbitration on October 16, 2024, and the Trivest

Defendants (TGIF Power Home Investor, LLC and Trivest Partners LP only) brought

their motion on October 24, 2024. The New Trivest Defendants filed their motion

to compel arbitration and dismiss on December 13, 2024, shortly after they were

brought into this action through Plaintiff's amended complaint.

### III.   ANALYSIS

#### A.   Waiver (Waller and the Trivest Defendants)

Regarding Waller and the Trivest Defendants, the primary issue before the

court is whether these Defendants waived their right to enforce the arbitration

agreements. The Supreme Court recently clarified that "the FAA's 'policy favoring

arbitration' does not authorize federal courts to invent special, arbitration-

preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

"The federal policy is about treating arbitration contracts like all others, not about

fostering arbitration." *Id*. (citations omitted). "Arbitration agreements are simply

contracts[.]" *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). "Waiver . . . 'is

the intentional relinquishment or abandonment of a known right.'" *Morgan*, 596

U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "The

Supreme Court recently held 'prejudice is not a condition of finding that a party

waived its right to compel arbitration under the Federal Arbitration Act.' So the test for waiver now has only two elements. Thus, 'a party waives its contractual right to arbitration if it [1] knew of the right; [and] [2] acted inconsistently with that right.'" *Roman v. Jan-Pro Franchising Intl., Inc.*, 342 F.R.D. 274, 292 (N.D. Cal. 2022) (quoting *Morgan*, 142 S. Ct. at 411).

"If, before moving to compel arbitration, a party moves to dismiss on a key merits issue, then the party's action is inconsistent with the right to arbitrate." *Id*. (citing *Newirth ex rel. Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 942 (9th Cir. 2019) ("Aegis intentionally withdrew the motion and proceeded to take advantage of the federal forum by filing a motion to dismiss Newirth's arbitrable claims, with prejudice, for failure to state a claim.")). Actions to be considered in determining whether conduct is "'completely inconsistent' with reliance on arbitration" include:  (1) the length of time the party waited to move for arbitration; (2) whether the party raised arbitration as an affirmative defense; (3) whether the party asserted other affirmative defenses; (4) whether the party participated in case management conferences; (5) whether the party filed a case management order; and (6) whether the party agreed to extend a case deadlines. *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 975 (6th Cir. 2024).

Here, Waller waited nearly two years to move to compel arbitration and failed to raise arbitration as an affirmative defense despite raising other affirmative defenses. (ECF No. 15, Answer to Complaint). And in the meantime, Waller vigorously litigated this matter in this forum. He engaged in case management conferences, filed a Rule 26(f) report, engaged in extensive discovery, affirmatively filed a motion for discovery sanctions (ECF No. 64), and filed a motion for judgment on the pleadings (ECF No. 37).[2] Waller participated heavily in the discovery process both before and after he received copies of the contracts. Waller provided a verified "Response to Plaintiffs' First Set of Interrogatories" that made no mention of an intent to move the dispute to arbitration, which also included voluminous objections. (ECF No. 59-2). Then, after he had already received the document production that contained Plaintiffs' contracts, he filed an opposition to Plaintiffs' motion to compel responses to those same interrogatories. (ECF No. 60). Waller's conduct is completely

---

[2] The court acknowledges that motions to dismiss on jurisdictional or quasi-jurisdictional grounds such as personal jurisdiction is not necessarily inconsistent with the right to arbitration. *In re Chrysler Pacifica Fire Recall*, 715 F. Supp. 3d at 1006-07. Waller's motion to dismiss based on personal jurisdiction was filed a year before his motion to compel arbitration and eight months after he filed his answer to the complaint. Considering how Waller vigorously litigated this matter for nearly two years, the motion for judgment on the pleadings is but one factor in the totality of the circumstances demonstrating waiver. Moreover, even without considering the motion for judgment on the pleadings, the court would still find waiver based on Waller's course of conduct over two years.

inconsistent with any reliance on arbitration. *Johnson Associates Corp. v. HL Operating Corp*., 680 F.3d 713, 715-719 (6th Cir. 2012) (Defendant waived arbitration where conduct was completely inconsistent with relying on arbitration provision where it waited eight months to assert arbitration rights, did not raise it as affirmative defense, participated in case management conferences and a settlement conference, filed a case management order, served discovery, and agreed to extend discovery deadline). In the court's view, Waller plainly waived his right to invoke the contractual arbitration provision.

Waller argues, however, that he did not *knowingly* waive his right to arbitrate because he was not aware of the arbitration provisions in the Sales Agreements until Plaintiffs produced them in discovery on August 7, 2024. He says that he did not have access to those agreements because all documents of PHS are the property of the Bankruptcy Estate and under the sole control of the Trustee. Waller also points out that he reserved his right to seek arbitration at a later date in the parties' Joint Rule 26(f) Report. The Joint Rule 26(f) Report states that Defendants "reserve the rights to contest the Court's subject matter jurisdiction on the following grounds . . . 3) depending on the terms of any contractual documents giving rise to the Complaint's allegations, arbitration may be the proper forum for this dispute." (ECF No. 55, PageID.611). Waller moved to

compel arbitration two months after receiving the Sales Agreements in discovery. However, in the meantime, Waller moved for discovery sanctions against Plaintiffs on September 6, 2024, and similarly opposed Plaintiffs' motion to compel after his receipt of the Sales Agreements, actions which favor waiver because Waller continued to litigate the merits in this court well after having the agreements with the arbitration provisions in hand.

Plaintiffs argue that it does not matter when a party had possession of the signed agreements, but instead, the question of knowledge turns on when they knew or had reason to know a dispute might be subject to arbitration.[3] *In re Chrysler Pacifica Fire Recall Products Liability Litigation*, 715 F.Supp.3d 1003 (E.D. Mich. 2024) ("But it taxes credulity to posit that FCA was not aware of the standard sales documents its dealers were using."); *In re Pawn Am. Consumer*

---

[3] Plaintiffs rely, in part, on *Speerly v. GM, LLC*, 115 F.4th 680 (6th Cir. 2024) in support of this proposition. There, the first time the defendant GM "raised an arbitration issue was during a hearing on a motion for leave to file a second supplemental complaint . . . when GM claimed that it had 'learned during the discovery process that many of the plaintiffs have arbitration agreements.'" *Id.* at 713. The court rejected this focus on when the particular plaintiffs' agreements were obtained. Given that at least some of the plaintiffs at issue had been named in the original complaint, and the "ubiquitousness of arbitration agreements in transactions such as the sale of a vehicle[,]" it was "difficult to believe that the first time GM was aware that at least some Plaintiffs may be subject to arbitration agreements was two-and-a-half years after the Plaintiffs filed their original complaint." *Id.* at 714. While this holding would likely be dispositive of the present waiver dispute, the court cannot rely on this case because the Sixth Circuit has since vacated the decision and is re-hearing the matter *en banc*. *See Speerly v. Gen. Motors, LLC*, 115 F.4th 680 (6th Cir.), *reh'g en banc granted, opinion vacated*, 123 F.4th 840 (6th Cir. 2024).

*Data Breach Litigation*, 672 F. Supp. 3d 691, 696 (D. Minn. 2023) ("[the defendant] had knowledge of the arbitration clauses because those arbitration clauses appeared in its own contracts. Plaintiffs do not need to prove that a particular agent . . . attained a particular level of subjective knowledge or understanding of [the] right to arbitrate."). Plaintiffs point to the extensive litigation of other PHS contracts that contain the same arbitration provision as the ones at issue here, illustrating the ubiquitousness of arbitration provisions in PHS contracts. The arbitration provision appears in a multitude of PHS contracts Waller was served with in connection with several recent cases, many of which were filed and in which Waller appeared before or around the time the present matter was filed.  (ECF No. 79-2).[4] Additionally, Waller's mention of arbitration as a jurisdictional defense in the Rule 26(f) report shows that he was aware of the arbitration provision in the PHS contracts. (ECF No. 55, PageID.611).

---

[4] *Mondello et al v. Power Home Solar, LLC et al*, Case No. 5:22-cv-01238-DAP (N.D. Ohio) (ECF Nos. 1-5, 4); *McConville v. Power Home Solar, LLC et al*, Case No. 5:22-cv-01277-DAP (N.D. Ohio) (ECF Nos. 1-2, 16); *Hutzell v. Power Home Solar, LLC et al*, Case No. 2:22-cv-02930-ALM-EPD (S.D. Ohio) (ECF Nos. 1-1, 25); *Heiland, et al., v. Power Home Solar, LLC et al*., Case No. 1:22-cv-00437-ALM-EPD (S.D. Ohio) (ECF Nos. 1-2, 22); *Steffen, et al., v. Power Home Solar, LLC et al*. Case No. 1:22-cv-004474-ALM-EPD (S.D. Ohio) (ECF Nos. 1-2, 19); *Farag v. Power Home Solar, LLC et al*, Case No. 1:22-cv-00448-ALM-EPD (S.D. Ohio) (ECF Nos. 1-2, 17); *Shultz v. Power Home Solar, LLC, et al*, Case No. 3:22-cv-00223-ALM-EPD (S.D. Ohio) (ECF No. 1-2, 17); *Whitaker v. Power Home Solar, LLC, et al*., Case No. 3:22-cv-00233-ALM-EPD (S.D. Ohio) (ECF Nos. 1-2, 14); *Spencer-Ward, et al. v. Power Home Solar, LLC, et al*., Case No. 2:22-cv-03149-ALM-EPD (S.D. Ohio) (ECF Nos. 1-2, 17); *Annon, et al. v. Power Home Solar, LLC, et al*., Case No. 2:22-cv-03174-ALM-EPD (S.D. Ohio) (ECF Nos. 1-2, 16); *Berger et al v. Power Home Solar, LLC et al*., Case No. 3:22-cv-00242-ALM-EPD (S.D. Ohio) (ECF Nos. 7, 12-1).

Waller's actions over the course of two years evidence his intent to take advantage of litigating in this forum by litigating the merits of these claims, despite knowledge of the existence of the ubiquitous arbitration provisions in PHS contracts. Moreover, Waller waited two months after receiving the Sales Agreements to move to compel arbitration. While this amount of time, by itself, may not be sufficient to show waiver, in the meantime, Waller moved for discovery sanctions against Plaintiffs on September 6, 2024, and opposed Plaintiffs' motion to compel, all without mentioning arbitration. Waller's actions in continuing to litigate the merits in this court after having the agreements with the arbitration provisions in hand further show waiver. Accordingly, the court finds that Waller was aware of the arbitration provision in the sales agreements at issue in this case based on his knowledge of the ubiquitous arbitration provisions in PHS Sales Agreements from other litigation and his acknowledgement in the Rule 26(f) report of the arbitration provision. Thus, his purported lack of knowledge does not change the court's waiver analysis above.

The waiver analysis for the Trivest Defendants is similar. Like Waller, the Trivest Defendants have long known the PHS standardized contracts contain arbitration provisions, as evidenced by Trivest's involvement in a number of cases where Trivest was served with PHS contracts that included the arbitration and

class waiver provision, but they did not invoke it in those cases. For example, in *Spencer-Ward et al v. Power Home Solar, LLC et al*, Case No. 2:22-cv-03149-ALM-EPD (S.D. Ohio) Trivest joined Waller in a February 21, 2023 amended complaint (attaching the contract with arbitration/class waiver clauses). (*Id*. at ECF No. 37). By way of another example, in *Riley et al v. Technology Credit Union et al*, 2:22-cv-04315-ALM-EPD (S.D. Ohio), Defendant Trivest waived service of a complaint to which the PHS contract was attached on January 24, 2023. (*Id*. at ECF No. 6, PageID.85). The contract contained the arbitration and class waiver provision.  (*Id*. at ECF No. 1-2, PageID.52). Trivest invoked the court's jurisdiction on both jurisdictional and merits grounds. (*Id*. at ECF No. 7). In *McConville v. Power Home Solar*, Case No. 22-01277 (N.D. Ohio), which was transferred to this Court (E.D. Mich. Case No. 23-11749); Trivest moved to dismiss the complaint on jurisdictional and merits grounds, despite the arbitration provision contained in the contract attached to the complaint. Plaintiffs identify several other cases where Trivest was served with complaints containing PHS contracts with arbitration provisions and filed motions to dismiss. *See e.g.*, *Bowe et al. v. Cross River Bank et al.*, Case No. 2:22-cv-04266 (S.D. Ohio) (ECF Nos. 1, 8); *Evans et al. v. Cross River Bank et al.*, Case No. 1:22-cv-00723 (S.D. Ohio) (ECF Nos. 1, 8); *Salazar et al. v. Cross River Bank et al.*, Case No. 2:22-cv-04314 (S.D. Ohio) (ECF Nos. 1, 6);

*Stenger et al. v. Technology Credit Union et al.*, Case No. 1:22-cv-00721 (S.D. Ohio) (ECF Nos. 1, 5); *Chamberlin et al. v. Technology Credit Union et al.*, Case No. 2:22-cv-04318 (S.D. Ohio) (ECF Nos. 1, 7); and *Genton et al. v. Technology Credit Union et al.*, Case No. 2:22-cv-04310 (S.D. Ohio) (ECF Nos. 1, 5).

Like Waller, the Trivest Defendants were well aware of the ubiquitous nature of the arbitration and class waiver provision in the PHS contracts. This knowledge is further demonstrated by the Trivest Defendants' assertion of arbitration as an affirmative defense and their mention of arbitration as a jurisdictional defense in the Rule 26(f) report. (ECF No. 55, PageID.611). Typically, such a preservation of rights would cut against waiver, but here, Trivest sought to keep this defense in reserve while actively engaging in this litigation, including seeking dismissal on the merits of Plaintiffs' claims. This it cannot do and still preserve its right to seek arbitration. *See Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 976 (6th Cir. 2020) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court.") (quoting *MC Asset Recovery LLC v. Castex Energy, Inc. (In re Mirant Corp.*), 613 F.3d 584, 591 (5th Cir. 2010)).

The Trivest Defendants' claim that it did not know of the arbitration provision until it received the copies of the Plaintiffs' agreements in discovery is

belied by the foregoing facts and the court finds such a notion defies credulity.

*See In re Chrysler Pacifica Fire Recall Products Liability Litigation*, 715 F.Supp.3d

1003 (2024) ("But it taxes credulity to posit that FCA was not aware of the

standard sales documents its dealers were using."). In *In re Chrysler Pacifica Fire*

*Recall Products Liability Litigation*, the court held that even if were accurate that

the defendant was not aware of the standard sales documents its dealers were

using, it does not change the fact that it sought an "immediate and total victory"

from the court by filing the motion to dismiss the complaint on the merits.

     Despite their knowledge of the ubiquitous arbitration provision in PHS

contracts, the Trivest Defendants chose to move forward for nearly two years

with litigating the merits of Plaintiffs' claims. They sought dismissal based on

jurisdictional and merits grounds. Indeed, the Trivest Defendants asked the court

to adjudicate the merits of every one of Plaintiffs' causes of action. As emphasized

in *Solo v. UPS Co*., 947 F.3d 968, 975 (6th Cir. 2020), "a motion to dismiss that

seeks 'a decision on the merits' and 'an immediate and total victory in the parties'

dispute' is entirely inconsistent with later requesting that those same merits

questions be resolved in arbitration. A party may not use a motion to dismiss 'to

see how the case [is] going in federal district court,' while holding arbitration in

reserve for 'a second chance in another forum[.]" *Id*. (citations omitted).

The Trivest Defendants also actively engaged in this litigation well after moving to dismiss though a number of actions. They opposed Plaintiffs' motion for a scheduling conference. They sought and were granted a Certificate of Appealability to pursue an appeal (albeit on a jurisdictional issue), which was granted. They participated in drafting the Rule 26(f) report and they participated in extensive discovery (both serving and responding) and case management conferences. These are precisely the type of actions, along with filing a motion to dismiss on the merits of Plaintiffs' claims, that are completely inconsistent with a party's right to pursue arbitration. *See Schwebke*, 96 F.4th at 975; *Johnson Assoc.*, 680 F.3d at 715-719. Most significantly, the Trivest Defendants asked this court to decide the merits of Plaintiffs' claims, which is the most inconsistent action it could have taken and firmly establishes waiver in light of the Trivest Defendants established knowledge of ubiquitous arbitration provisions in PHS agreements. And the Trivest Defendants asserted that the agreements here had arbitration provisions in them. Yet, instead of taking any action to obtain copies of those agreements from the bankruptcy trustee or otherwise moving to compel arbitration, Defendants sat on their rights and went about vigorously litigating the merits of Plaintiffs' claims instead. Under the foregoing circumstances, the court finds that the Trivest Defendants waived their right to seek arbitration.

B.  Nonsignatory Enforcement (the New Trivest Defendants)

This waiver analysis does not apply, however, to Trivest Partners, Inc., Trivest Growth Partners, Inc., Trivest Growth Partners, L.P., Trivest Growth Partners GP, LLC, Trivest Growth Investment Fund, L.P., TGIF Power Home Blocker, Inc., and Trivest Investment Advisors, LLC, the seven "New Trivest Defendants," who were brought into this action when Plaintiffs amended their complaint on November 29, 2024. Shortly thereafter, on December 13, 2024, the New Trivest Defendants filed their motion to dismiss and to compel arbitration. The New Trivest Defendants, therefore, did not act clearly inconsistently with their right to demand arbitration.[5]

However, the court will deny the New Trivest Defendants' motion to compel arbitration for a different reason. Under the circumstances of this case, they are not entitled to invoke the doctrine of equitable estoppel to enforce the arbitration agreement, to which they are not signatories, against Plaintiffs.[6]

---

[5] Plaintiffs argue that Waller and the Trivest Defendants' waivers should be imputed to the New Trivest Defendants based upon theories of alter ego or agency. Because the court bases its decision on other grounds, it need not consider these potentially fact-intensive theories at this time.

[6] Had Waller and the Trivest Defendants not waived their right to seek arbitration, this estoppel analysis would apply equally to them, as nonsignatories to the arbitration agreements.

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA allows the court to enforce an arbitration agreement by staying an action and compelling arbitration. 9 U.S.C. §§ 3, 4. As the Supreme Court has explained, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). A dispute regarding "whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id*. at 84. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

The FAA places arbitration agreements on "the same footing as other contracts," but "it does not alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (2020) (citations omitted). The often-noted

16

federal policy in favor of arbitration makes "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (citation omitted).

      As a threshold matter, the New Trivest Defendants argue that the arbitration agreement contains a delegation clause, which requires the arbitrator, not the court, to determine arbitrability. The parties may agree that the arbitrator decide "gateway" questions of arbitrability, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S, 63, 68-69 (2010)). "Such an agreement, commonly known as a delegation clause, requires 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide arbitrability." *Id.* (cleaned up; citations omitted).

      The agreement at issue provides that

> **THE UNDERSIGNED PARTIES, AS CONTRACTOR AND BUYER UNDER THE ATTACHED SOLAR ENERGY SYSTEM PURCHASE & INSTALLATION AGREEMENT (THE "AGREEMENT"), ACKNOWLEDGE, COVENANT AND AGREE THAT ANY CLAIM, DISPUTE OR OTHER MATTER IN QUESTION ARISING OUT OF OR RELATED TO THE AGREEMENT, THE PROJECT, AND/OR THE SYSTEM (INCLUDING ANY ALLEGED DEFECT THEREOF) SHALL BE SUBJECT TO BINDING BILATERAL ARBITRATION IN ACCORDANCE WITH THE CONSTRUCTION INDUSTRY**

17

**ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN EFFECT.**

ECF 102-1 at PageID 2392. This language does not provide "clear and unmistakable" evidence that the parties agreed to have an arbitrator decide arbitrability. *Hutzell v. Power Home Solar, LLC*, 734 F. Supp. 3d 761, 767 (S.D. Ohio 2024) (finding similar language "reveals no 'clear and unmistakable evidence' that the parties intended to arbitrate questions of arbitrability"). In contrast, the agreement in *Swiger* required the parties to arbitrate "any issue concerning the *validity, enforceability, or scope* of this . . . Agreement to Arbitrate." *Swiger*, 989 F.3d at 506 (emphasis added). The *Swiger* court found that this language "constitutes a delegation clause, clearly and unmistakably showing that the parties agreed to arbitrate issues of arbitrability." *Id*. There is no similar language in the arbitration agreement here; accordingly, the issue of arbitrability is for the court to decide. *See Howsam*, 537 U.S. at 83-84 (a dispute regarding "whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide").

The New Trivest Defendants are not signatories to the arbitration agreements they seek to enforce, which were included in the purchase agreements between Plaintiffs and PHS. However, "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract

18

through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citing 21 R. Lord, WILLISTON ON CONTRACTS § 57:19 (4th ed. 2001)). Accordingly, whether a nonparty may enforce an arbitration agreement is a question of state law. *Id.* The parties agree that Michigan law applies.

The New Trivest Defendants seek to enforce the arbitration provision against Plaintiffs under an equitable estoppel theory. *See AFSCME Council 25 v. Wayne Cnty.*, 292 Mich. App. 68, 81 (2011) (noting that "nonsignatories of arbitration agreements can still be bound by an agreement pursuant to ordinary contract-related legal principles, including . . . estoppel"). "Generally, in the arbitration context, 'equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory.'" *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (citation omitted); *Wieland Corp. v. New Genetics LLC*, 2021 WL 1499969, at *6 (Mich. App. Apr. 15, 2021) ("[A] nonsignatory may be bound by an arbitration agreement under an estoppel theory when the nonsignatory seeks direct benefit

from the contract while disavowing the arbitration provision."). Equitable estoppel serves to prevent a party from claiming "the benefit of the contract and simultaneously avoid[ing] its burdens." *Id.* (citation omitted); *see also Vascular Mgmt. Servs. of Novi, LLC v. EMG Partners, LLC*, 2023 WL 2436801, at *8 (Mich. App. Mar. 9, 2023) (stating that an equitable estoppel theory allows a nonsignatory "to compel arbitration where the signatory must rely on the terms of the agreement in asserting its claims against the nonsignatory").

This theory of equitable estoppel does not apply here. Plaintiffs are not attempting to enforce the purchase agreements against the Defendants and recover on contract or warranty theories. Rather, they are alleging that Defendants engaged in a fraudulent scheme in violation of RICO and the Michigan Consumer Protection Act. In order to prove their claims of wire and mail fraud, or false advertising, Plaintiffs need not reference the terms of their agreements with PHS, nor are they attempting to hold Defendants to those agreements. Plaintiffs are not attempting to benefit from their contracts and "have their cake and eat it too" such that it would be equitable for the court to require them to arbitrate their fraud/false advertising claims with a nonparty to the arbitration agreements.

Defendants assert that Plaintiffs must arbitrate because they allege that the nonsignatory Defendants engaged in "concerted misconduct" with the signatory,

20

PHS. They rely upon an unpublished case from the Michigan Court of Appeals, *City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*, 2010 WL 1875758, at *7 (Mich. App. May 11, 2010). In that opinion, the court relied upon federal cases, primarily from the Fifth Circuit, to hold that a plaintiff who was a party to an arbitration agreement was estopped from avoiding arbitration against nonsignatory defendants when its claims were based on "substantially interdependent and concerted misconduct" by all defendants. *Id.* (relying primarily on *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir.2000) and *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)). These cases applied federal common law to enforce arbitration agreements, an approach that predated the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), which made clear that the Federal Arbitration Act does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* at 630.

The Sixth Circuit has observed that "concerted-misconduct estoppel . . . originates with federal cases applying federal common law and asserting that 'the federal policy in favor of arbitration' would be 'thwarted' without it. [But] these cases are no longer good law after *Arthur Andersen*." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 531 (6th Cir. 2021) (applying Ohio law). The court must apply Michigan

contract law, rather than federal law, to determine whether equitable estoppel is appropriate. Given that the only Michigan case cited by Defendants relies upon federal cases rather than Michigan contract principles, it is not clear that Michigan law allows for the theory of concerted-misconduct estoppel to apply to permit nonsignatories to an arbitration agreement to enforce it. *See In re Auto. Parts Antitrust Litig.,* 2017 WL 3579753, at *5 (E.D. Mich. Apr. 18, 2017), *vacated in part on other grounds,* 2019 WL 13400622 (E.D. Mich. Apr. 24, 2019) (describing "Michigan law on the matter of equitable estoppel" as "confused").

The Michigan Supreme Court has held, however, that although "Michigan's public policy favors arbitration, . . . this general position favoring arbitration does not go so far to override foundational principles of contract interpretation." *Lichon v. Morse*, 507 Mich. 424, 437, 968 N.W.2d 461, 467 (2021). Defendants have not explained how concerted-misconduct estoppel comports with traditional principles of contract enforcement under Michigan law.[7] Indeed, the federal "courts that accept concert-misconduct estoppel . . . fail to identify any traditional common-law 'analog' that could justify it." *AtriCure*, 12 F.4th at 530-31.

---

[7] *See generally AtriCure*, 12 F.4th at 529 ("The federal decisions invoking estoppel whenever a claim relates to a contract do not ground this broad test in anything resembling traditional estoppel at common law. While they use the phrase 'equitable estoppel,' they rest more on the federal policy favoring arbitration and efficiency concerns than on a traditional view of that doctrine.").

Consistent with the Michigan Supreme Court's direction that "foundational principles of contract interpretation" apply to arbitration agreements, the court discerns no basis to apply a federally created concerted-misconduct estoppel theory to allow the nonsignatory New Trivest Defendants to enforce the arbitration agreements against Plaintiffs.

    C.  <u>Other Grounds for Dismissal (New Trivest Defendants)</u>

The New Trivest Defendants also move for dismissal based upon lack of personal jurisdiction, failure to state a claim, and failure to join a necessary party. The New Trivest Defendants acknowledge that the court addressed these arguments in an Opinion and Order granting in part and denying in part the Trivest Defendants' motion to dismiss, but state that they are raising them to preserve them for appeal. ECF No. 102 at PageID 2353-54 n.1; ECF No. 32 (Opinion and Order). Accordingly, with respect to the New Trivest Defendants' arguments in favor of dismissal, the court incorporates its September 12, 2023 Opinion and Order by reference and **DENIES** the New Trivest Defendants' motion to dismiss for the reasons set forth in that Opinion and Order. ECF No. 32.

IV.     **CONCLUSION**

For the reasons set forth above, the court **DENIES** the motions to compel

arbitration and dismiss (ECF No. 70, 75, and 102).

**SO ORDERED**.

Date: May 23, 2025                                    s/F. Kay Behm
                                                     F. Kay Behm
                                                     United States District Judge