UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HALL, *et al.*,

        Plaintiffs,

v.

TRIVEST PARTNERS, L.P., *et al.*,

        Defendants.

_____ /

Case No. 22-12743

F. Kay Behm
United States District Judge

## OPINION AND ORDER GRANTING MOTION TO PRELIMARILY APPROVE CLASS ACTION SETTLEMENT WITH DEFENDANT WALLER (ECF No. 156)

### I.   PROCEDURAL HISTORY

This matter is currently before the court on Plaintiffs' unopposed

motion to preliminarily approve the class action settlement with Defendant

Waller only.  (ECF No. 156).  The court held a hearing on this motion on July

22, 2026.  For the reasons set forth below, the motion is **GRANTED**.

### II.   FACTUAL BACKGROUND

Plaintiffs and the proposed Settlement Class Members purchased

home solar systems through Power Home Solar, LLC (d/b/a Pink Energy)

("PHS/PE").  (ECF No. 96, Amended Complaint ¶¶ 110-112).  Plaintiffs alleged

that Defendants violated RICO through their management and operation of

1

PHS/PE through a pattern of racketeering activity. *Id*. ¶¶ 145-173. The Complaint alleges a fraudulent scheme designed to lure unsuspecting consumers into purchasing home solar systems to be designed, installed, and sold by PHS/PE, carried out by the defendants through multiple uses of the mail and wires. *See id*. ¶¶ 93-102.

Plaintiffs filed their Complaint against Defendants Waller and his co-Defendants on November 13, 2022, bringing claims for violation of RICO, 18 U.S.C. § 1962(a) & (c), and 18 U.S.C. § 1962(d), and the Michigan Consumer Protection Act. (ECF No. 1). Plaintiffs' Complaint was filed following an extensive pre-suit investigation conducted by Plaintiffs' Counsel. (ECF No. 156-2, Coulson Decl., ¶ 12). The parties proceeded with contentious discovery, including two motions to compel and a motion for sanctions. (ECF Nos. 59-66, 76, 80, 85).

On April 30, 2025, this Court ordered the parties to mediation, which took place on May 2, 2025, before Hon. Victoria Roberts, a retired federal district judge. As a result of this mediation, which involved adversarial, arm's-length negotiations between counsel experienced in similar matters, the Plaintiffs and Waller executed a term sheet, agreeing to settle the claims

asserted in the Amended Complaint on the terms and conditions set forth herein, subject to the Court's review and approval.

In October 2024, Defendant Waller and the original Trivest defendants separately moved to compel this case to arbitration.  (ECF Nos. 70, 75).  After the mediation but before Plaintiffs and Waller executed the Agreement, the court denied those motions, and both Defendant Waller and the original Trivest defendants appealed.  (ECF Nos. 143, 147, 149).  During the pendency of the interlocutory appeal, the court stayed proceedings.  (ECF No. 151).  Plaintiffs and Defendant Waller continued to memorialize the settlement, and the parties executed a final agreement on September 15, 2025.  They moved the court for an indicative ruling that, if the Sixth Circuit remanded Defendant Waller's appeal, the court would grant the Plaintiffs' and Waller's motion to lift the stay and consider a motion for preliminary approval of the Settlement Agreement.  (ECF No. 152).  The court granted that motion on October 21, 2025, ECF No. 153, and the Sixth Circuit remanded the case on November 3, 2025, ECF No. 154.  The Plaintiffs and Waller filed a joint motion lift the stay for purposes of settlement proceedings, which the court granted.  (ECF No. 155, 157).

Plaintiffs now seek to certify a Settlement Class consisting of "All persons in the United States who purchased a home solar system from Power Home Solar, LLC (including d/b/a Pink Energy) at any time since August 1, 2018." (ECF No. 156-1, Settlement Agreement, ¶ 1.19).  Excluded from the Settlement Class are: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's insurer(s); (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly excludes themselves from the Settlement.  *Id*.

Under the proposed Settlement Agreement, Defendant Waller will provide monetary relief to the Settlement Class Members and, in exchange, Plaintiffs and the Settlement Class Members will release certain claims against Defendant Waller.  *Id*. ¶¶ 3, 5.  Defendant Waller and/or his insurer will create a non-reversionary common fund for the benefit of the Settlement Class Members in the amount of $575,000.00, which will be held in escrow (after the payment of such attorney fees as the court may approve).  *Id*. ¶¶ 1.18, 3.3.  The proposed Settlement Agreement includes a full release and discharge by Plaintiffs and the Class of any and all claims against Defendant Waller that were or could have been asserted in this case or that relate to

their purchase of a solar energy system from PHS/PE, except that the release does not bar or release any claims against (1) any lender involved in the financing of a Class Member's solar system; (2) the manufacturer of any component of a Class Member's solar system; or (3) any other Defendant in the Action, or any other entities related to the business collectively operated as Trivest. *Id*. ¶¶ 5, 1.13.

The Settlement Agreement calls for the appointment of a third-party administrator, and the parties have chosen Kroll Settlement Administration, LLC (the "Administrator"), to administer the settlement. (ECF No. 156-1, Settlement Agreement, ¶ 1.17; ECF 156-2, Coulson Decl., ¶ 17). The Agreement also provides that notice of preliminary approval of the settlement will be distributed to the Class in accordance with the Notice specifications approved by the court. (ECF No. 156-1, Settlement Agreement, ¶¶ 1.12, 4.2; see also Ex. B to Settlement Agreement ("Ex. 1B"), Class Notice).

Within fifteen days after the court issues its preliminary approval order Class Counsel will provide the names and email addresses of all potential Class Members to the Administrator. (ECF No. 156-1, Settlement Agreement, ¶ 4.2(c)(i)). The Administrator will disseminate the Class Notice to each Class Member within twenty-one days of receiving the names and email addresses.

Id. ¶ 4.2(c)(ii).  If any Email Notices are returned as undeliverable, the Administrator will use an advanced search process to find an alternate email address.  (ECF No. 156-3, Kroll Decl., ¶ 9).  The Administrator will post on the Settlement Website the Class Notice, which includes instructions for opting out or objecting to the settlement, the Settlement Agreement, the Preliminary Approval Order, and after it is filed, Plaintiffs' Counsel's fee application.  (ECF No. 156-1, Settlement Agreement, ¶ 4.2(a); ECF No. 156-3, Kroll Decl., ¶ 10). Class Members will have 60 days from the date Notice is emailed to object to or opt out of the Settlement.  *Id*., Settlement Agreement, ¶ 1.15.

After deducting attorney's fees and the cost of settlement administration (Class Counsel will request an award of reasonable attorney's fees of 1/3 of the Settlement Fund, *id*. at ¶ 7.1), the Settlement Fund will remain in an Escrow account under legal custody of the court until it is distributed pursuant to the Agreement or further order of the court.  *Id*. at ¶¶ 3.1, 3.3(c)-(e).

Because the litigation may continue against the Trivest Defendants, and to prevent the unnecessary expenses associated with multiple claims and payment processes, Plaintiffs do not at this stage propose allocation and distribution of the Settlement Fund.  Instead, Plaintiffs propose that the

balance of the Settlement Fund remain in the Escrow Account until the Action has concluded against all defendants and then be distributed in accordance with a plan to be proposed to and approved by the Court at that time. Plaintiffs anticipate that this plan and distribution would include both the balance of the Settlement Fund as well as any funds obtained from the remaining defendants, whether by settlement, judgment, or otherwise. As a result, there will be no claims process in connection with the initial administration of the Settlement Agreement. *Id*. ¶ 3.3(i).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions and requires the settling parties to any class action to obtain court approval for their settlement agreement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval"). At the preliminary stage of the approval process, the court must decide whether to give notice of the settlement to the class of individuals who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments ("As amended, Rule 23(e)(1) provides that the court must direct notice to the

class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice. This decision has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions.").

In order to justify a court's preliminary approval and decision to give notice to the members of the class, the parties must show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> > (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).  In addition to the factors set forth in Rule 23(e)(2), the Sixth Circuit has adopted its own factors to consider in deciding whether a class action settlement is "fair, reasonable, and adequate," many of which overlap with the Rule 23(e) factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

As explained in *In re AME Church Emp. Ret. Fund Litig.*, No. 22–MD–03035, 2026 WL 1046590, at *7 (W.D. Tenn. Apr. 17, 2026), "[t]he decision to give notice of a proposed settlement to the class is an important event." (Quoting Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1)).  The court's determination requires "a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object."  *Id.* (quoting Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1)).  The Notes to Rule

23(e) counsel that "[t]he court should not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing." *Id*.  As a result, the settling parties have the burden to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(A)).

## IV.   ANALYSIS

### A.   <u>Likelihood of Approval under Rule 23(e)(2)</u>

#### 1.   *Adequacy of Representation and Arms-Length Negotiations*

The class representatives and the class counsel have adequately represented the class and engaged in arm's length negotiation.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).  "The focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A)–(B), 2018 Advisory Committee Notes.

The named Plaintiffs do not have any conflicts that exist with the absent Class Members.  (ECF No. 156-2, ¶ 11).  And as explained at the hearing, the class representatives have participated in written discovery and have all sat

for depositions in this matter, thus vigorously representing the absent Class Members. Accordingly, Counsel believes that the named class representatives have acted in the best interest of the class. *Id*. Class counsel is well qualified to represent the Class as Class Counsel. They have diligently sought to represent the interests of the proposed Settlement Class in this action by carefully investigating both the liability issues and class issues alleged in the complaint, participating in contentious discovery that allowed both sides to evaluate the strengths and weaknesses of Plaintiffs' claims and the defenses thereto, as well as the value of this case. (ECF No. 156-2, ¶ 12). The parties also engaged in significant motion practice, including a motion to dismiss, motion to compel arbitration, three motions to compel, and a motion for sanctions. *Id*. Plaintiffs have shown that their settlement was result of day long formal mediation with the Hon. Victoria Roberts and protracted arms' length negotiations. (ECF No. 156-2, ¶¶ 13, 14). "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusions between the parties." *Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131-JTF-cgc, 2013 WL 12094870, at *3 (Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). The court finds that Class Counsel has negotiated

a favorable Settlement Agreement, including through the use of a neutral mediator, and has vigorously prosecuted Plaintiffs' claims on behalf of the Class throughout this litigation.

> ii.  *Adequacy of the Relief and Fair Treatment of the Class Members*

The next two factors require the court to consider whether the relief provided for the class is adequate and whether the proposal treats class members equitably relative to each other.  The court will first address adequate relief and then equitable treatment.  To address the adequacy of the requested relief, courts should consider:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  This analysis "overlap[s] with the *International Union* factors requiring that the Court evaluate the 'complexity, expense, and likely duration of the litigation' and the 'likelihood of success on the merits.'" *In re Flint Water Cases*, 571 F. Supp. 3d 746, 781 (E.D. Mich. 2021) (quoting *UAW*, 497 F.3d at 631).  Here, the court finds that the relief is adequate.

The court notes that because Plaintiffs are not proposing a plan of allocation and distribution of settlement funds at this stage, the second factor is not yet relevant.  The risks, costs, and delay inherent in further litigation are substantial, given that the resources from which Waller might satisfy any judgment (the insurance policy) are quickly depleting.  That is, the D&O policy applicable here is an eroding policy, meaning that expending it on litigation eats into what is left to satisfy any judgment against Waller.  If this matter were to go to trial and be appealed, it is quite likely that any judgment against Waller would be uncollectible.  (ECF No. 156-2, ¶ 21).

Pursuant to the terms of the Settlement Agreement, Class Counsel plan to request attorney's fees in an amount not to exceed one-third of the total settlement value.  (ECF No. 156-1, Settlement Agreement, ¶ 7.1).  "An attorney's fee of one-third of the recovery is standard in class actions." *In re AME Church Emp. Ret. Fund Litig.*, No. 1:22-MD-03035, 2025 WL 900003, at *7 (W.D. Tenn. Mar. 24, 2025) (citing *Stewart v. Baptist Mem'l Health Care Corp.*, 2024 WL 4360602, at *8 (W.D. Tenn. Sept. 30, 2024) (approving an award of one-third of the gross amount of the settlement fund and collecting cases)); *see also Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("The 'majority of common fund fee awards fall between 20% and

30% of the fund.'"); *Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 279814, at *9 (E.D. Mich. Jan. 23, 2017) (Michelson, J.) (finding plaintiffs' anticipated attorneys' fee request of 33% of the settlement fund, or approximately $2.25 million, "in the ballpark of a reasonable award" for purposes of preliminary approval); *American Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-01162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (determining that a 30% attorney fee of $800,000 out of a total settlement figure of $2,400,000 was reasonable).  Given Plaintiffs' Counsel's expertise in similar complex litigation and their efforts to secure this significant relief for the Class, the standard fee request is preliminarily justified.  Notably, any award is subject to the court's discretion and approval.

Lastly, there are no agreements other than the Settlement Agreement that are relevant to the court's consideration.  (ECF No. 156-2, Coulson Decl., ¶ 22).  Because the Settlement Agreement is attached as Exhibit 1 to Plaintiffs' Motion, the fourth factor is satisfied.

The remaining UAW factors include "(5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *UAW*, 497 F.3d at 631.  An analysis of these factors also favors settlement.  The motion is unopposed and class representatives and

class counsel both support settlement.  The notice program has not commenced, so the sixth factor is not quantifiable at the preliminary approval stage.  The settlement also serves the public interest.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *see also Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation omitted).  Here, resolving this case through a settlement conserves judicial resources in an unpredictable class-action lawsuit, with Waller's ever dwindling ability to pay, given the type of insurance policy applicable here.

Having made a determination on each of the Rule 23(e)(2) factors and the *UAW* factors, the court concludes that it will likely be able to approve the settlement under Rule 23(e)(2).

B.      Likelihood of Settlement Class Certification

The court must now determine whether it "will likely be able to ... certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  A court may certify a class for settlement purposes where the

proposed class "satisfies each of Rule 23(a)'s requirements and [ ] falls within one of three categories permitted by Rule 23(b)." *UAW*, 497 F.3d at 625.

### 1.    Rule 23(a) Requirements

Rule 23(a)(1)–(4) requires numerosity, commonality, typicality, and adequacy of representatives for class certification.

First, the class is numerous. Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "The plaintiff is not required to 'establish that it is impossible to join all members of the proposed class[,]' but simply that joinder 'would be difficult and inconvenient.'" *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (alteration in original) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992)).  While no strict numerical test exists, "substantial numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (internal quotation marks omitted). Here, the Settlement Class includes approximately 32,967, which is a number large enough to make joinder difficult and inconvenient.  (ECF No. 156-2, Coulson Decl., ¶10).  Thus, the numerosity requirement is satisfied.

Second, there are common questions of law and fact.  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered

the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)).  The question is not "whether common questions predominate, but ... whether there is even a single common question.'"  *Id*. at 359 (internal citations and quotations omitted).  The putative members' claims must depend on a common contention capable of class-wide resolution, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.  "The threshold for commonality is not high." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (quotation marks and citation omitted).

Plaintiffs allege that Waller along with the other Defendants, engaged in a common course of misconduct towards the proposed Class, giving rise to questions of both law and fact common to Class Members.  (ECF No. 1, PageID.2178, ¶ 139).  Plaintiff points to several common questions in the case: (1) whether an enterprise existed for purposes of RICO; (2) whether the enterprise affected interstate commerce; (3) whether Defendant Waller was associated with or employed by the enterprise; (4) whether Defendant Waller participated in the enterprise; (5) whether Defendant Waller conducted or participated in the conduct of the enterprise; (6) whether such conduct of the

17

enterprise was through racketeering activity; (7) whether Waller's conduct constituted predicate acts of mail and/or wire fraud; and (8) whether such racketeering activity constituted a pattern.  In sum, Plaintiffs' allegations revolve around the common alleged conduct of Waller's operation of PHS/PE. The court finds the commonality requirement is satisfied.

Third, the claims and defenses are typical of the settlement class. "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit*., 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).  The "claim is not typical if '[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.'" *Woodall v. Wayne Cnty, Mich*., No. 20-1705, 2021 WL 5298537, at *4 (6th Cir. Nov. 15, 2021) (alteration in original) (quoting *Sprague*, 133 F.3d at 399).  The commonality and typicality requirements "tend to merge." *Rikos v. The Procter & Gamble Co*., 799 F.3d 497, 509 (6th Cir. 2015) (quoting citation omitted).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

Plaintiffs' claims, and those of the Class Members, involve the same type of alleged damages for the same type of injury caused by an alleged singular course of conduct by Waller and others, that is, the fraudulent and misleading sales practices of PHS/PE.  Here, because Plaintiffs' claims all arise from the type of sale and same legal theory, resolving the claims of the named Plaintiffs would resolve the claims of the entire class.

Fourth, the class representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The Sixth Circuit has articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"  *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. at 576 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)).  In addition, the court should "determine whether class counsel are qualified, experienced and generally able to conduct the litigation."  *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)) (internal quotation marks omitted).

Plaintiffs have no conflict of interest with the absent Class Members and have retained Class Counsel with significant experience conducting

class and complex litigation in state and federal courts throughout the country.  (ECF No. 156-2, Coulson Decl., ¶¶ 5-8).  The named Plaintiffs have the same interests as the Class members: seeking recovery for the alleged fraudulent and misleading sales practices of PHS/PE.  Plaintiffs were all impacted by the same alleged sales scheme as the Class members.  Further, Class Counsel has negotiated a favorable Settlement Agreement, including through the use of a neutral mediator, and has vigorously prosecuted Plaintiffs' claims on behalf of the Class throughout this litigation.  Accordingly, the court concludes that Class Representatives and Class Counsel will adequately represent the class.

>           *2.      Rule 23(b) Requirements*

The Class must also satisfy one of the three requirements of Rule 23(b).  Plaintiffs contend the class satisfies Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals, and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3)).  Plaintiffs must "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are

20

subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (alteration in original) (quoting *In re Visa Check/ MasterMoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 136 (2d Cir. 2001)) (internal quotations omitted).  At the preliminary approval stage, "the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424 (E.D. Mich. 2021).

According to Plaintiffs, the key elements of their claims—the alleged fraudulent scheme to lure unsuspecting consumers into purchasing home solar systems and the existence and proper measure of resultant damages— are common issues that predominate for the entire Class.  The Class has been impacted in a similar manner and to a similar degree, rendering any individual issues, such as damages, of lesser importance.  Because the alleged fraudulent scheme presents a common question that "is at the heart of the litigation," the predominance requirement is met.  *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287

21

F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d

549, 554 (6th Cir. 2006)).  Courts should consider both the difficulties that

may arise in managing a class action as well as the purpose of class action

litigation.  *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463–64 (6th Cir.

2020).  "Relevant factors in this inquiry include: (1) the interests of the class

members in individually controlling separate actions; (2) the extent and

nature of the litigation already begun by members of the class; and (3) the

desirability of concentrating the litigation in a particular forum." *In re Flint*

*Water Cases*, 499 F. Supp. 3d at 425.

While Plaintiffs acknowledge that Waller was previously named in other

actions, Plaintiffs say they are informed and believe that no such actions

remain pending, which suggests that Class Members have little if any interest

in maintaining separate actions.  According to Plaintiffs, class resolution

achieves economies of time, effort, and expense while ensuring uniformity of

decision.  Plaintiffs say that the alternative to resolving this case as a class

action is inefficient individual litigation that would leave unredressed the

claims of most Class Members for whom active participation is not feasible

for financial or other reasons.  The court agrees that resolving these claims

together on behalf of a certified Class is fair and more efficient.  Class

resolution will also prevent wasting the resources of the Court and the parties by providing a single, orderly resolution to the case with a consistent result, as demonstrated by the proposed Settlement.

Therefore, the requirements of Rule 23(a) and Rule 23(b)(3) are met, and the court finds that it will likely be able to certify the class for purposes of approving the settlement.  Accordingly, having decided that the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class the purposes of judgment on the proposal," the court will **PRELIMINARILY APPROVE** the settlement agreement.  *See* Fed. R. Civ. P. 23(e)(1)(B)(i).

C.     Notice

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  In a similar fashion, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (stating that "all that the notice must do is fairly apprise ... prospective members of

23

the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests") (internal quotation marks and citations omitted).  The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).  Plaintiffs seek to certify a class pursuant to Rule 23(b)(3) and thus, the notice must include, in "'plain, easily understood language':

(1) The nature of the action;
(2) The definition of the class certified;
(3) The class claims, issues, or defenses;
(4) That a Class Members may enter an appearance through an attorney if the member so desires;
(5) That the court will exclude from the class any member who requests exclusion;
(6) The time and manner for requesting exclusion; and
(7) The binding effect of a class judgment on members under Rule 23(c)(3).

*Moeller v. Week Pubs., Inc.*, 2023 WL 119648, at *8 (E.D. Mich. January 6, 2023) (quoting Fed. R. Civ. P. 23(c)(2)(B)).

The Settlement Agreement provides for notice to the Settlement Class substantially in the form attached as Exhibit B to the Settlement Agreement, (ECF No. 156-1).  Within 36 days after the court issues its preliminary approval order, the Administrator will disseminate the Class Notice to each Settlement

Class Member via email.  (ECF No. 156-1, Settlement Agreement, ¶ 4.2; ECF No. 156-3, Kroll Decl., ¶ 6).  Further, the Administrator will post the Agreement and Class Notice on the Settlement Website, which contains instructions for opting out of or objecting to the settlement.  (ECF No. 156-1, Settlement Agreement, ¶ 4.2(a); ECF No. 156-3, Kroll Decl., ¶ 10).  Settlement Class Members will then have 60 days from the Notice Date to opt out or object to the Settlement Agreement.  *Id*. at ¶ 1.15.  Any Settlement Class Member who chooses to opt out will not be bound by the Settlement Agreement and will not release any claims against Defendant Waller.  *Id*. at ¶ 4.5(a).

The court finds that the notice plan for the settlement readily meets the applicable standards.  The notice plan adequately informs all potential settlement class members of the terms of the settlement agreements, provides the opportunity to make informed decisions, and satisfies due process.

## V.   ORDER

Plaintiffs individually and on behalf of each member of the Settlement Class, moved this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order preliminarily approving the proposed settlement of

their lawsuit against defendant William Jayson Waller in accordance with the Settlement Agreement and Release (the "Agreement")[1] filed with this court. The court having read and considered the Agreement, considered the submission of Plaintiffs, Plaintiffs and Defendant having consented to the entry of this Order, and for the reasons set forth in the above Opinion:

**IT IS ORDERED**:

1.      The Agreement, including all its terms and conditions, is preliminarily approved as fair, just, reasonable and adequate, subject to further consideration at a Fairness Hearing.

2.      For purposes of settlement only, the court conditionally certifies the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3). The court further finds that all the requirements of Fed. R. Civ. P. 23(a) and (e)(1) are satisfied. Aaron Hall, Katherine Glod, and Jeffrey Binder are appointed as representatives of the Settlement Class, and Nicholas A. Coulson and Julia Prescott are hereby appointed as Class Counsel.

3.      The court appoints Kroll Settlement Administration, LLC as Settlement Administrator (the "Administrator").  The Administrator shall perform all duties set out in the Agreement as established therein.

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Agreement.

4.     The court approves the form of the Class Notice (Exhibit B to the Agreement) and directs that the Administrator shall serve same upon the Settlement Class in compliance with the Agreement.  The court finds that service of the Class Notice in this manner constitutes the best notice practicable under the circumstances to members of the Settlement Class and complies fully with the provisions set forth in Federal Rule of Civil Procedure 23(e)(1) and any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law.  The court further finds that the Class Notice clearly and concisely informs the Settlement Class of their rights and options with respect to the proposed settlement, in plain, easily understood language, in conformance with the requirements of Federal Rule of Civil Procedure 23.

5.     As provided for in the Class Notice, the Settlement Class shall be afforded the right to either Opt-Out of the Settlement Agreement or object to the final approval of this Settlement.

7.     The Final Fairness Hearing is scheduled for **December 2, 2026 at 2:00PM**, at which time the court will consider the entry of a Final Order and Judgment, as well as Plaintiffs' anticipated request for attorneys' fees.

8. Members of the Settlement Class shall have until sixty (60) days after the issuance of Notice to Opt-Out of the Settlement Class. Any Class Member who chooses to Opt-Out shall be excluded from the Settlement Class and shall have no rights under the Agreement. A request for exclusion must comply with the requirements in paragraph 4.5(a) of the Agreement. All persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in paragraph 4.5(a)(ii) of the Agreement, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All persons falling within the definition of the Settlement Class who do not opt-out of the Settlement Class in the manner set forth in paragraph 60 of the Agreement shall be bound by the terms of the Agreement and Judgment entered thereon.

9. All members of the Settlement Class who do not Opt-Out of the settlement shall have sixty (60) days after the issuance of Class Notice to object to the proposed settlement. Any objection must comply with the requirements in paragraph 4.5(b) of the Agreement. Objections must be filed with the court and served on Class Counsel and Defendant's Counsel no later than sixty (60) Days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Notice. Class Counsel and

Defendant's Counsel may, but need not, respond to the Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing. An objecting Settlement Class Member has the right, but is not required, to attend the Final Approval Hearing.  If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file a notice of appearance with the court (as well as serve the notice on Class Counsel and Defendant's Counsel) by the Objection Deadline.  Any member of the Settlement Class who fails to timely object substantially in the manner prescribed herein or to appear at the Fairness Hearing may be deemed to have waived their objections and forever be barred from making any such objections in this action.  Only members of the Settlement Class shall have the right to object to the settlement.

**SO ORDERED**.

Dated:  July 28, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge

29